**STELMA et al., Appellees; Stelma, Cross–Appellant,**

v.

**JUGUILON et al., Appellants and Cross–Appellees.**

[Cite as *Stelma v. Juguilon* (1992), 73 Ohio App.3d 377.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 60584, 60600 and 60645.

Decided Jan. 9, 1992.

378

*Fred Weisman, Mitchell A. Weisman* and *Wendel E. Willmann,* for appellee and cross-appellant.

*Jerome S. Kalur* and *Robert C. Seibel,* for appellants and cross-appellees.

FRANCIS E. SWEENEY, Judge.

Defendants-appellants and cross-appellees, Augusto C. Juguilon, M.D. et al., timely appeal the judgment entered in favor of plaintiff-appellee Victoria J. Stelma in the amount of $8,000,000 and in favor of plaintiff and cross-appellant Gary Stelma for $1 and against appellants Augusto C. Juguilon, M.D. and Euclid Clinic Foundation. Plaintiff and cross-appellant Gary Stelma timely appeals the trial court's denial of his motion for new trial on the issue of his damages for loss of consortium. For the following reasons, we overrule appellants' Assignment of Error Nos. I through VI and VIII, sustain appellants' Assignment of Error No. VII, and sustain cross-appellant's Assignment of Error Nos. I through IV regarding the $1 verdict on Gary Stelma's loss-of-consortium claim.

The facts giving rise to this appeal are as follows:

Plaintiffs, Victoria and Gary Stelma, filed their negligence complaint in the court of common pleas against several defendants, including Augusto C. Juguilon, M.D. and Euclid Clinic Foundation. The complaint prayed for damages for personal injuries to Victoria, contending that her quadriplegia directly resulted from malpractice in prescribing and causing to be performed upon her unnecessary and unjustified cerebral arteriography and raising a claim of lack of informed consent. Gary filed a claim for loss of services, companionship and consortium. The issue of proximate cause was stipulated and agreed to between all parties.

This action was submitted to an arbitration panel pursuant to R.C. 2711.21. On March 1, 1989, the panel filed its arbitration award. The three-member panel unanimously found that Gary Stelma's damages were $750,000. Two arbitrators found in favor of Victoria Stelma in the amount of $4,250,000, and one arbitrator found in her favor in the amount of $7,000,000. Plaintiffs immediately filed their motion for the trial court to review the admissibility of the arbitration decision. Appellants filed their notice of nonacceptance of the award, which failed to state the basis for their rejection of the award.

On March 3, 1989, the trial court made a determination that the arbitration proceedings "were fairly conducted and without prejudice to either party" pursuant to R.C. 2711.21. On November 14, 1989, appellants moved for a hearing on the admissibility of the arbitrators' award. The trial court overruled this motion, finding that it was untimely. The report and award of the arbitrators was admitted into evidence at trial upon plaintiffs' motion.

After a jury trial, a general verdict was entered in favor of Victoria Stelma and against appellants Dr. Juguilon and Euclid Clinic Foundation in the amount of $8,000,000 and in favor of Gary Stelma for $1. Plaintiffs filed a motion for prejudgment interest following the verdict. Appellants filed a motion for new trial and request to interview the jurors. Plaintiff Gary Stelma filed a motion for new trial on the issue of damages. The trial court overruled both motions for new trial and the request to interview the jurors.

Plaintiff Gary Stelma timely appeals the trial court's denial of his motion for new trial in case No. 60584. Appellants timely appeal the trial court's order regarding discovery in the prejudgment interest proceeding in case No. 60645. Appellants also timely appeal from the trial court's denial of their motion for new trial in case No. 60600. These appeals have been consolidated for hearing and disposition before this court.

For the reasons set forth below, we affirm the judgment of the trial court in part and reverse (1) the trial court's judgment denying appellants' motion for a protective order regarding appellee's motion for discovery in prejudgment

interest proceedings and (2) the trial court's denial of Gary Stelma's motion for new trial on the issue of his damages for loss of consortium.

## Assignment of Error No. I

"The trial court erred by refusing to grant a pre-trial evidentiary hearing on Dr. Juguilon's motion to exclude the arbitration award from evidence."

■ Appellants argue the trial court erred in denying appellants' motion for a hearing on the admissibility of the arbitration award because R.C. 2711.21(C) obligated the trial court to conduct a hearing. This argument is without merit.

R.C. 2711.21(C) provides, in pertinent part, that the decision shall be admitted into evidence at trial if the court conducts a review of the arbitration decision and any other relevant information submitted by the parties and concludes the decision is not clearly erroneous and is in accordance with applicable law and that the procedures were conducted fairly and properly. R.C. 2711.21 does not state the method by which a party may challenge the admissibility of the award; however, Loc.R. 37(N), in effect at the time, provides that the award becomes final thirty days after its filing unless a party files a notice of nonacceptance of such award. In addition, Loc.R. 37 states that a party may file an application to vacate the award, which must be accompanied by affidavits demonstrating one or more of the above defects in the award. A party is only entitled to a hearing on the allegations if he files said motion to vacate with attached evidence. *Amato v. Estate of Shaw* (Nov. 20, 1986), Cuyahoga App. No. 53153, unreported, 1986 WL 13347.

In the present case, appellants failed to file a motion to vacate and, thus, the trial court was not required to hold a hearing prior to determining that the award was admissible. Furthermore, appellants' motion for a hearing was untimely in that it was not filed until seven and one-half months after the trial court had made the determination. Additionally, it should be noted that this motion contained no attached evidence.

Accordingly, the trial court did not err in denying appellants' motion for a hearing.

Assignment of Error No. I is overruled.

## Assignment of Error No. II

"The trial court erred to the prejudice of Dr. Juguilon and Euclid Clinic Foundation by permitting the broadcasting of court proceedings in violation of C.P.Sup.R. 11(A) and then refusing permission to allow post-trial interviews of the jurors."

■ Appellants argue the trial court erred to the prejudice of appellants in giving only oral, and not written, permission to the media to broadcast the trial as required by Canon 3A(7) of the Code of Judicial Conduct. Appellants also argue that the trial court erred in not allowing appellants to interview the jurors pursuant to Loc.R. 22(E). These arguments are without merit.

C.P.Sup.R. 11(A) states, in pertinent part, that the judge presiding at the trial shall permit broadcasting in court proceedings open to the public as provided in Canon 3A(7) of the Code of Judicial Conduct. See *State ex rel. Grinnell Communications Corp. v. Love* (1980), 62 Ohio St.2d 399, 16 O.O.3d 434, 406 N.E.2d 809; Canon 3A(7) of the Code of Judicial Conduct. Canon 3A(7) requires permission to be granted in writing pursuant to such conditions as the judge may provide.

In the present case, the record indicates the media made a written request to broadcast the proceedings in compliance with C.P.Sup.R. 11(A), and the trial court gave oral permission to the media at a pretrial hearing, outlining the conditions and procedures of the broadcasting as required under C.P.Sup.R. 11(A). Thus, we cannot find that appellants were prejudiced by the trial court's grant of oral, rather than written, permission. Accordingly, any error committed by the trial court was harmless.

■ Appellants also contend the trial court erred in denying appellants' request to interview jurors to determine whether the publicity affected their verdict. Loc.R. 22(E) provides, in pertinent part, that an attorney shall only question a juror with leave of court granted upon good cause shown. In the present case, appellants have not presented any evidence to show that any juror was prejudiced or biased because of publicity in this case. Furthermore, the trial court repeatedly instructed the jury not to observe any media coverage until the case was concluded. Thus, we cannot find that appellants have made a good cause showing to support their Loc.R. 22(E) request.

Accordingly, we find the trial court did not err in denying appellants' request to interview jurors.

Assignment of Error No. II is overruled.

## Assignment of Error No. III

"The trial court erred in allowing plaintiffs' expert medical witness to testify that a reasonabl[y] prudent person would have decided against the procedure that produced the injury if there had been a fuller explanation of the risks and alternatives thus resulting in an invasion of the jury's province."

■ Appellants contend the trial court erred in allowing plaintiffs' expert medical witness, Dr. Victor, to state his opinion on an ultimate issue in the

case that was within the comprehension of lay jurors. Specifically, he testified that a reasonable person would not have consented to angiography if there had been an acceptable explanation of the nature, need, risks and alternatives of the procedure.

When an issue of fact is within the experience, knowledge and comprehension of the jury, expert opinion testimony of that issue based upon "scientific, technical, or other specialized knowledge" is unnecessary and inadmissible as it would not assist the jury to understand the evidence or to determine a fact in issue. *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 519 N.E.2d 662; Evid.R. 702 and 704. Rulings concerning the admissibility of expert testimony are within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 563 N.E.2d 339.

In the present case, one of the essential elements of appellee and cross-appellant's lack-of-informed-consent claim was whether a "reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145. Thus, the expert's testimony as to what a "reasonable person" would have done was determinative of an ultimate issue in the case. See Evid.R. 704. However, the expert's specialized background and experience in evaluating a patient's response to the disclosed risks could have been helpful in assisting the jury to understand what the ordinary patient would do in that situation. Thus, we cannot find that the trial court erred in allowing this testimony.

Assignment of Error No. III is overruled.

### Assignment of Error No. IV

"The trial court erred when it denied Dr. Juguilon's motion for directed verdict at the close of all the evidence on plaintiffs' claim for lack of informed consent."

Appellants contend the trial court erred in denying appellants' motion for directed verdict on the claim of lack of informed consent on the ground that plaintiff Victoria Stelma testified that she would have undergone the procedure even if she had been advised of the undisclosed risks. This argument is without merit.

The standard for granting a motion for directed verdict is set out in Civ.R. 50(A)(4) which states:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

One of the essential elements of lack of informed consent is whether a reasonable person *in the position of the patient* would have decided against the therapy if advised of the material risks and dangers. *Nickell, supra.*

In the present case, the following testimony was adduced by Victoria Stelma on cross-examination:

"Q. Assume that you're told by Dr. Berman there in 1986—

"A. Um-hum.

"Q. —that you could have an aneurysm, which is a time bomb. And that we could wait, but we raise the risk of the bomb going off. And if we find it, and angiography's the only way to find it, then we can fix it. And that your chances of having paralysis or quadriplegia are one in 10,000; would you have the procedure?

"* * * *

"Q. If Dr. Juguilon had told you each of the things I just told you would you have had it done?

"A. If Dr. Juguilon felt so certain that there was an aneurysm and it was a time bomb that could kill me and had to have it then, yes, I would have trusted his opinion."

Appellants contend that Mrs. Stelma's statement can only lead reasonable minds to conclude that she would have undergone the treatment in this case even if fully informed of the risks. Thus, appellants contend her informed consent claim must fail as a matter of law. However, appellee prefaced her answer by stating that only if Dr. Juguilon had felt certain that there was an aneurysm would she have had the treatment. In the present case, Dr. Juguilon testified that he thought she *might have had* an aneurysm. Thus, Mrs. Stelma's statement leaves open a question for the jury as to whether a patient *in her position* would have undergone the treatment. Accordingly, we find that reasonable minds could differ on the question of whether a reasonable person in Mrs. Stelma's position, a patient with a *possible* aneurysm, would have withheld consent if informed of the risks of treatment.

Accordingly, Assignment of Error No. IV is overruled.

### Assignment of Error No. V

"The trial court erred by not granting a new trial based on improper closing argument of plaintiffs' counsel."

Appellants contend the trial court erred in denying appellants' motion for new trial based on plaintiffs' counsel's prejudicial and improper closing argument. This contention is without merit.

In reviewing a claim of misconduct by counsel during closing arguments, this court is bound by the principle that counsel is afforded a wide latitude in addressing the jury. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 9 OBR 544, 459 N.E.2d 1315. The extent of the latitude as determined by the trial court is to be reviewed under abuse-of-discretion standards. *Id.* Moreover, a judgment will not be reversed on the grounds of misconduct in closing arguments unless the circumstances are of such reprehensible, heinous nature as to constitute prejudice. *Hitson v. Cleveland* (Dec. 13, 1990), Cuyahoga App. No. 57741, unreported, 1990 WL 204337.

First, appellants contend counsel improperly remarked on the severity of Victoria Stelma's injuries and the excellence of Dr. Victor. Since appellants did not object to these statements at trial, we need not consider this alleged error on appeal. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364. Furthermore, the trial court is not required to intervene *sua sponte* to nullify the prejudicial effect of counsel's conduct unless counsel grossly and persistently abuses his privilege. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464, 468. These remarks, made only once, did not constitute gross and persistent abuse. In addition, these remarks were supported by the evidence and, thus, did not prejudice appellants.

Second, appellants contend counsel improperly referred to evidence not in the record when he stated that Dr. Juguilon never mentioned at his discovery deposition that Mrs. Stelma may have had a TIA ("transient ischemic attack"). However, at trial, Dr. Juguilon did testify that he never mentioned TIA at his deposition. Therefore, appellants' contention is without merit.

Accordingly, Assignment of Error No. V is overruled.

### Assignment of Error No. VI

"The trial court erred by not reducing the verdict for Mrs. Stelma pursuant to R.C. 2307.43 and 2305.27."

Appellants contend that R.C. 2307.43 is constitutional and requires that plaintiffs' recovery be limited to $200,000. Appellants also contend that R.C. 2305.27 is constitutional and requires the reduction of the award by the

total value of Mrs. Stelma's social security disability payments of $114,616. These arguments will be addressed separately.

First, the Supreme Court of Ohio recently held that R.C. 2307.43, which limits recovery of general damages in any medical claim to $200,000, is unconstitutional on due process grounds. *Morris v. Savoy* (1991), 61 Ohio St.3d 684, 576 N.E.2d 765. Thus, plaintiffs' award is not limited by R.C. 2307.43.

■ Second, while the Supreme Court of Ohio found R.C. 2305.27 to be constitutional, the court did not decide whether social security benefits constitute "insurance" under R.C. 2305.27. *Id.*

R.C. 2305.27 provides:

"Except as provided in section 2743.02 of the Revised Code, in any medical claim, as defined in division (D) of section 2305.11 of the Revised Code, *an award of damages shall not be reduced by insurance proceeds or payments or other benefits paid under any insurance policy or contract where the premium or cost of such insurance policy or contract was paid either by or for the person who has obtained the award, or by his employer, or both, or by direct payments from his employer.* * * * " (Emphasis added.)

R.C. 2305.27 prohibits the reduction of an award or damages by any amounts paid under any insurance policy where the premium or cost of the policy was paid either by or for the person who obtained the award, or by his employer, or both.

Sections 401 through 433, Title 42, U.S.Code of the Social Security Act are captioned "Insurance Benefits." In fact, throughout the Social Security Act, Congress uses terms such as "disability insurance benefit payments," "insured status," "insurance trust fund," "insurance benefit payments," and other phrases consistent with the concept of insurance. One of the main purposes of the Social Security Act is to provide disability benefits to *insured* persons when their physical impairments are of such a severity as to prevent gainful employment. *Seislowski v. Secretary of Health, Education & Welfare* (E.D.N.Y.1979), 477 F.Supp. 682. The laws governing social security establish a mandatory insurance scheme whereby employees and their employers pay "insurance coverage" to entitle the employees to benefits under the Social Security Act. Thus, we conclude social security disability benefits constitute payments under an insurance policy or contract where the premium or cost of the policy is paid for by both the employer and employee.

■ Moreover, regardless of whether R.C. 2305.27 prohibits reduction of social security disability payments from an award of damages, the disability payments do not represent collateral recovery for "loss of earned income."

Therefore, R.C. 2305.27 does not require the damage award to be reduced by the disability payments.

The Supreme Court has held that social security disability benefits do not constitute "income" as that term is generally understood. *Sharp v. Union Carbide Corp.* (1988), 38 Ohio St.3d 69, 525 N.E.2d 1386. In *Morris, supra,* Justice Sweeney stated that workers' compensation benefits, like social security benefits, are not "income" and, thus, do not constitute a collateral source which may be used to reduce the jury's award. *Id.,* 61 Ohio St.3d at 714, 576 N.E.2d at 786 (Sweeney, J., concurring in part and dissenting in part). We agree with the analysis set forth by Justice Sweeney in *Morris, supra,* and likewise conclude that the social security disability benefits do not constitute a collateral source which must be used to reduce plaintiffs' award of damages.

Accordingly, Assignment of Error No. VI is overruled.

### Assignment of Error No. VII

"The trial court erred by ordering that plaintiffs are entitled to complete and unlimited discovery in connection with their motion for prejudgment interest without regard for the attorney-client and work-product privileges. (case No. 60645)"

Appellants argue the trial court erred in denying their motion for a protective order regarding plaintiffs' requests for discovery in connection with their motion for prejudgment interest. This argument has merit.

When a plaintiff, having obtained a judgment against a defendant, files a motion for prejudgment interest on the amount of that judgment pursuant to R.C. 1343.03(C), the plaintiff, upon a showing of "good cause" pursuant to Civ.R. 26(B)(3), may have access through discovery to those portions of the defendant's insurer's "claims file" that are not shown by the defense to be privileged attorney-client communications. *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918, syllabus. If the defense asserts the attorney-client privilege with regard to the contents of the "claims file," the trial court shall determine by *in camera* inspection which portions of the file, if any, are so privileged. *Id.*

The Rules of Civil Procedure, as utilized in the general discovery process, are applicable to R.C. 1343.03(C) proceedings. *Cotterman v. Cleveland Elec. Illum. Co.* (1987), 34 Ohio St.3d 48, 517 N.E.2d 536. This not only includes the exceptions contained in Civ.R. 26(B), but also, by implication, R.C. 2317.02 and similar statutes which exclude particular confidential communications from the discovery process. *Id.*

In the present case, appellants requested that the trial court issue a protective order as to Items 3, 4 and 7 of plaintiffs' *duces tecum* requests on the grounds of attorney-client privilege. Items 3, 4 and 7 request the following documents:

"3. Any and all writings whatsoever which relate directly or indirectly to the negotiations or preparation for negotiations that took place January 16, 1986 to the present date in this case.

"4. Any and all office memoranda, and other writings whatsoever, to or from Physicians Insuring Exchange pertaining to evaluation and negotiations (and the processing or methodology of same) of the within *Stelma* case. " * * *

"7. Any and all minutes, memoranda and writings relating to the committee meetings of Physicians Insurance Exchange which relate in whole or in part to the consideration, evaluation or any other attention given to the within lawsuit."

In the trial court's "Findings of Law and Opinion and Judgment Entry" denying appellants' motion, the court held that "the Pre–Judgment discovery defenses of attorney-client privilege and work product do not apply to the Post–Judgment cause of Pre–Judgment interest." The court also held " * * * that the potential remedy for Post–Judgment discovery issues (in-camera) by the court is impractical and unworkable as it intrudes (the court) into the broad spectrum of information contained in the defense files. * * * "

We find that the trial court erred in finding that the attorney-client privilege and work product privilege do not restrict discovery in prejudgment interest proceedings. See *Cotterman* and *Peyko, supra.* The trial court also erred in finding that appellants were not entitled to an *in camera* inspection of the alleged privileged materials before disclosure. Since the trial court failed to determine by *in camera* inspection which portions of the file, if any, are privileged, this cause is remanded to the trial court for further proceedings consistent with this opinion.

Assignment of Error No. VII is sustained.

### Assignment of Error No. VIII

"A new trial is warranted because of the cumulative effect of the errors occurring at trial."

Appellants argue that a new trial is required based on the cumulative effects of error at trial. This argument is without merit. See *Dawson v. Cleveland Metro. Gen. Hosp.* (Nov. 20, 1986), Cuyahoga App. Nos. 51052 and 51779, unreported, 1986 WL 13323.

As we have previously stated, we found no error committed by the trial court in appellants' assignments of error. Thus, we cannot find that appellants are entitled to a new trial based on errors committed at trial.

Assignment of Error No. VIII is overruled.

### Cross–Assignment of Error No. I

"The trial court erred in denying plaintiff, Gary Stelma's, motion for new trial because a one dollar ($1.00) judgment for the loss of his wife's services, companionship and consortium is inadequate; and it appears to have been given under the influence of passion or prejudice. [Civ.R. 59(A)(4).]"

### Cross–Assignment of Error No. II

"The trial court erred in denying said motion for new trial upon the issue of damages because a one dollar ($1.00) judgment for the loss of his wife's services, companionship and consortium is not sustained by the weight of the evidence; and is against the manifest weight of the evidence. [Civ.R. 59(A)(6).]"

### Cross–Assignment of Error No. III

"The trial court erred in denying said motion for new trial because a one dollar ($1.00) judgment is contrary to law. [Civ.R. 59(A)(7).]"

### Cross–Assignment of Error No. IV

"The trial court erred in denying said motion for new trial because a one dollar ($1.00) judgment is unjust; and good cause for a new trial on Gary Stelma's damage issue is thus demonstrated."

Cross-appellant Gary Stelma argues that the trial court erred in denying his motion for new trial on the issue of his damages for loss of services, companionship and consortium because the one dollar verdict was contrary to law, against the manifest weight of the evidence, and appears to have been given under the influence of passion and prejudice. This argument has merit.

In reviewing a claim that the verdict is against the manifest weight of the evidence, an appellate court reviews the entire record to determine whether the judgment is supported by some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

In the present case, the arbitration panel found that Gary Stelma's damages for loss of consortium were $750,000. The arbitrators' award was admitted into evidence at trial. At trial, the jury heard evidence that Gary and Victoria

Stelma were married in 1973 and their daughter was born in 1974. They bought a home, worked together in the yard, enjoyed being with friends, playing cards and camping on the weekends. Through the years, Victoria was gainfully employed at various places: Lawsons, Skortis Painting, May Company and Fisher Fazio's. Following January 16, 1986, the thirty-six-year-old Victoria became a quadriplegic, permanently and totally disabled and impaired, totally dependent and no longer functioning as a wife in her home duties, social activities with her husband, or in their intimate life. Dr. Victor testified that Victoria can do nothing for herself and needs constant attendance at all times. An economist, Dr. Burke, testified that the value of past and future economic loss of Gary Stelma's wife's services amounts to $1,171,-706. This evidence was uncontroverted.

Based on the evidence presented at trial, and the jury's finding that appellants negligently caused Victoria Stelma's quadriplegia, we find no competent evidence to support a $1 verdict for Gary Stelma's loss of his wife's companionship, solace, love, service and sexual relations. Accordingly, the judgment of the trial court on Gary Stelma's claim is contrary to law and against the manifest weight of the evidence. Further, a $1 verdict is so grossly inadequate that it appears to have been given under the influence of passion or prejudice. In conclusion, we affirm the judgment entered in favor of Victoria Stelma on the issue of liability in the amount of $8,000,000 and reverse the judgment entered on the $1 verdict in favor of Gary Stelma and remand the case for a partial new trial on the sole issue of money damages to Gary Stelma for his loss of services, companionship and consortium arising from the malpractice which caused his wife's quadriplegia.

Accordingly, Cross–Assignment of Error Nos. I through IV are sustained.

The judgment is affirmed in part, reversed in part and the cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SPELLACY and BLACKMON, JJ., concur.