CAMPBELL et al., Appellees and Cross–Appellants,

v.

WARREN GENERAL HOSPITAL et al.; Belany, Appellant and Cross–Appellee.

[Cite as *Campbell v. Warren Gen. Hosp.* (1994), 105 Ohio App.3d 417.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 93–T–4932.

Decided Dec. 12, 1994.

*Richard D. Goldberg,* for appellees and cross-appellants.

*Janis L. Small* and *David W. Sumner,* for appellant and cross-appellee.

CACIOPPO, Judge.

This action involves the care and treatment rendered to Martin Campbell ("Campbell") by Dr. John Belany during an admission to Warren General Hospital in April 1990.

Appellees filed a medical malpractice action in the Trumbull County Common Pleas Court on September 18, 1991 against Warren General Hospital, Robert E. Bisel, D.O., Daniel Fitzpatrick, D.O., John Belany, D.O., and K. Brian Williams, D.O. On February 14, 1992, Warren General Hospital was voluntarily dismissed without prejudice from the case. Dr. Williams and Dr. Bisel were dismissed on

March 31, 1993 and May 24, 1993, respectively. This action proceeded to a jury trial against the remaining two defendants, Dr. Fitzpatrick and appellant, on May 25, 1993.

On June 4, 1993, the jury returned a verdict in favor of both defendants. Plaintiffs filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial on June 6, 1993. The trial court granted the motion for new trial against Dr. Belany. The defense verdict in favor of Dr. Fitzpatrick was upheld. Dr. Belany filed a notice of appeal on July 29, 1993.

Appellee Martin Campbell was admitted to Warren General Hospital on April 9, 1990 for hip surgery. At the time of his admission to the hospital, Campbell was fifty-seven years old with a prior history of asthmatic bronchitis and polymyalgia rheumatica, conditions which were treated with steroids. On April 10, 1990, Campbell underwent a total hip replacement performed by Dr. Brian Williams without incident.

Approximately seventy-two hours after surgery, Campbell began to develop shortness of breath. Dr. Belany suspected that Campbell had suffered a pulmonary embolus, a potentially fatal blood clot in the lung. In an attempt to dissolve the clot that he believed to be present, Dr. Belany ordered heparin, a blood thinner, for Campbell.

On April 15, 1990, Dr. Belany left for a seminar and Dr. Bisel followed the progress of Campbell in Dr. Belany's absence. Near midnight on April 19, 1990, Dr. Fitzpatrick, at the request of Dr. Bisel, examined Campbell concerning abdominal pain and distension he was experiencing. Dr. Fitzpatrick diagnosed a left rectus muscle hemorrhage and recommended that the administration of heparin be stopped.

On the morning of April 21, 1990, Dr. Biggs, covering for Dr. Fitzpatrick, examined Campbell, who had vomited twice the night before. Dr. Biggs ordered that Campbell have a nasogastric ("NG") tube put in place because of an ileus (loss of peristaltic movement of the bowels). An NG tube helps in decompressing the contents of the stomach.

Dr. Belany, after returning from his seminar, saw Campbell in the early afternoon of April 21. Dr. Belany removed the NG tube, which had been put in place only a few hours beforehand. The doctor was concerned that the NG tube could adversely affect Campbell's breathing and actually aggravate the ileus. The following day, Dr. Fitzpatrick examined Campbell, felt that he was doing better, and concurred with the removal of the NG tube.

On the morning of April 24, 1990, Campbell began experiencing severe right lower quadrant abdominal pain. Dr. Belany ordered Motrin for the pain. Later, after an x-ray revealed air under the diaphragm consistent with a bowel perfor-

ation, Dr. Fitzpatrick took the patient into emergency surgery. Dr. Fitzpatrick discovered two holes in the cecum, which required Campbell to undergo a colostomy. Campbell was subsequently discharged from the hospital on May 11, 1990 wearing a colostomy bag which was in place until his intestines were reconnected in September 1990.

At trial, appellees' expert witness, Dr. W. Stuart Battle, testified that Dr. Belany's actions fell below acceptable standards of care in determining that Campbell had a significant probability of pulmonary embolus; therefore, there was nothing to justify the dosage of heparin used. Dr. Battle was of the opinion that the heparin caused the bleeding in Campbell's abdominal wall which led to the ileus. In addition, Dr. Battle testified that Dr. Belany's actions fell below acceptable standards of medical care by his removal of the NG tube. It was Dr. Battle's opinion that these deviations from accepted standards of care caused the perforation of the cecum resulting in Campbell's colostomy.

Appellant testified that he complied in all respects with acceptable standards of care. In retrospect, Dr. Belany testified that he believed that the bowel actually perforated on April 20, 1990 due to chronic steroid use by the patient and the stress of hip replacement surgery. In addition, an expert witness for appellant, Allen J. Zagoren, D.O., testified that chronic steroid use can cause the bowel to perforate.

█ Appellant filed a timely notice of appeal. Appellees filed a timely notice of cross-appeal. However, appellees have failed to argue the assignment of error separately in their brief as required under App.R. 16(A). Consequently, we disregard appellees' assignment of error presented for review.

Appellant presents three assignments of error.

"I. The trial court erred by granting the Motion for New Trial on the basis that expert testimony was given without a proper foundation under Evid.R. 601(D)."

█ Appellant argues that the trial court erred in granting appellees' motion for new trial on the basis that expert testimony was given without a proper foundation under Evid.R. 601(D).

At trial, Dr. Belany testified on his own behalf, over objection by appellees, concerning the standard of care to be applied in this case. The trial court allowed Dr. Belany's expert medical testimony without first inquiring into whether he met the competency requirements for such experts, as delineated in Evid.R. 601(D). This rule generally allows any adult to qualify as a witness; however, an exception exists for medical experts unless the witness (1) has a license to practice medicine, and (2) "devotes at least one-half of his or her professional

time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school." Evid.R. 601(D). The purpose behind this rule is to ensure that the expert is qualified to provide the standard of care for the community and to prevent testimony from a physician whose motive in providing this testimony may be suspect. *McCrory v. State* (1981), 67 Ohio St.2d 99, 103, 21 O.O.3d 63, 65, 423 N.E.2d 156, 159–160; *Crosswhite v. Desai* (1989), 64 Ohio App.3d 170, 176, 177, 580 N.E.2d 1119, 1123–1124.

The determination of whether a medical witness is competent to testify lies within the sound discretion of the trial judge. "The qualifications of an expert is [*sic*] a matter for determination by the trier of the facts, and 'rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion.'" *Akron v. Pub. Util. Comm.* (1966), 5 Ohio St.2d 237, 242, 34 O.O.2d 467, 470, 215 N.E.2d 366, 370–371, quoting *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 386, 58 O.O. 179, 184, 131 N.E.2d 397, 400. Although the trial court originally allowed Dr. Belany to testify concerning the standard of care applicable to this case, appellees' motion for new trial was granted in part because the trial court permitted expert testimony to be given without a proper foundation under Evid.R. 601(D) and over proper objection by appellees' counsel.

Civ.R. 59(A) authorizes a trial court to grant a new trial for a number of reasons, including:

"(1) Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

" * * * *

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application."

Considerable deference is afforded the trial court's decision to grant a new trial:

"The generally accepted rule is that a reviewing court should view the evidence favorably to the trial court's action rather than to the jury's verdict. The predicate for that rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice." *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198, 202, 423 N.E.2d 856, 861.

A review of the record reveals that Dr. Belany's testimony was composed primarily of two subject matters: (1) the care he gave Campbell, and (2) whether

his treatment conformed to the appropriate standard of care within the medical community. Nothing in the Rules of Evidence would preclude Dr. Belany from testifying as to the care he gave his patient. In addition, he is not precluded from also giving testimony as to the standard of care within the medical community provided that he first meets the competency requirements of Evid.R. 601(D). To allow a doctor who faces claims of malpractice to testify as a medical expert, without first establishing his competency to give such an opinion, runs the risk that such testimony may be inaccurate and self-serving.

Appellant characterizes the trial court's application of Evid.R. 601(D) to support a new trial in this case as "hypertechnical." While we agree with appellant's general characterization of Evid.R. 601, Evid.R. 601(D) specifically exempts medical experts from this general presumption. Although some courts seem willing to relax the competency requirements of Evid.R. 601(D), we decline to do so in this case. See *Adkins v. Minella* (Nov. 10, 1992), Miami App. No. 91 CA 64, unreported, 1992 WL 324329. See, generally, *State v. Rau* (1989), 65 Ohio App.3d 478, 584 N.E.2d 788.

This court is of the opinion, based on the limited evidence we have before us, that Dr. Belany was probably competent to testify as to the appropriate standard of care in this case. Nonetheless, we are reluctant to overrule the granting of the motion for new trial given the importance that the applicable standard of care, as conveyed by appellant and appellees' expert witness, had to the jury's determination of malpractice in this case. The trial court is simply in a better position than we are to determine whether the jury's verdict was altered by Dr. Belany's failure to establish his competency as required under Evid.R. 601(D).

Appellant's first assignment of error is overruled.

"II. The trial court erred by granting a motion for new trial on the basis of misconduct of defense counsel during closing argument."

In his second assignment of error, appellant says that the trial court erred in granting a new trial based on alleged misconduct by defense counsel during closing argument.

During cross-examination of appellees' expert, defense counsel referred to various medical journal articles in an attempt to impeach Dr. Battle's testimony. Dr. Battle testified that he was unfamiliar with each article defense counsel presented.

In numerous discussions with counsel for both parties, the trial court stated that medical journal articles would not be allowed to be mentioned during closing argument. The trial court granted appellees' motion for new trial in part because defense counsel in closing argument chose to ignore the trial court's instruction *in limine* regarding medical journal articles.

A determination of misconduct by counsel is within the sound discretion of the trial court. *Pierson v. Hermann* (1965), 3 Ohio App.2d 398, 400, 32 O.O.2d 533, 534, 210 N.E.2d 893, 895–896. While mindful that counsel is afforded wide latitude in addressing the jury during closing argument, this court will not reverse the decision of the trial court absent an abuse of discretion. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 9 OBR 544, 459 N.E.2d 1315; *Stelma v. Juguilon* (1992), 73 Ohio App.3d 377, 597 N.E.2d 523. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

The trial court is in the best position to observe any adverse effects defense counsel's closing argument had on the jury. If defense counsel's comments prevented appellees from receiving a fair trial, the granting of a new trial under Civ.R. 59(A) was proper.

Appellant's second assignment of error is overruled.

"III. The trial court erred by not allowing Dr. Bisel, a former defendant in this case, to testify that his management of the plaintiff's care was appropriate."

Appellant argues that the trial court erred when it did not allow Dr. Bisel, a former defendant in this case, to testify that his management of Campbell's care was appropriate.

This alleged error occurred at trial and is not germane to appellees' motion for new trial. As we have already determined that the trial court did not err in granting appellees a new trial, a discussion concerning the testimony of Dr. Bisel at trial is not necessary.

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER, P.J., and MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.