DECISION.
Plaintiffs-appellants Horace and Zita Flannery appeal the trial court's denial of their motions for a directed verdict, judgment notwithstanding the verdict, and a new trial following the judgment entered upon jury verdicts in favor of defendants-appellees on the Flannerys' claims for physical-therapy and medical malpractice.
FACTS AND PROCEEDINGS
On June 9, 1997, plaintiff-appellant Horace Flannery underwent surgery to reconstruct the rotator cuff of his right shoulder. Dr. James Leonard, an orthopaedic surgeon and a member of defendant-appellee Ohio Valley Orthopaedics Sports Medicine, Inc. (Ohio Valley), performed the surgery, which was carried out without complication. After his discharge from the hospital on June 11, 1997, Mr. Flannery saw Dr. Leonard for a follow-up checkup on June 16, 1997. At that checkup, Mr. Flannery appeared to be progressing according to expectations, and Dr. Leonard prescribed physical therapy for him.
On June 23, 1997, Mr. Flannery had his first physical-therapy session at defendant-appellee University Orthopaedics Sports Medicine. Defendant-appellee Barbara Klus, now Barbara Klus Smith, performed the physical therapy. According to Mr. Flannery, Klus Smith was extremely rough with him and caused a popping sound in his shoulder that left him in excruciating pain. Mr. Flannery also claimed that Klus Smith's treatment of him caused his incision to begin draining and bleeding.
As a result of Mr. and Mrs. Flannery's concerns regarding the incision's appearance and Mr. Flannery's extreme pain, Mr. Flannery requested to be seen at Dr. Leonard's office on June 25, 1997. Because Dr. Leonard was away on vacation, Mr. Flannery was seen by one of Dr. Leonard's partners, Dr. David Taylor, who instructed Mr. Flannery to begin taking Clindamycin, an oral antibiotic. When the condition of his shoulder did not improve the next day, Mr. Flannery returned to Ohio Valley to have it looked at again. While en route, he was involved in an automobile accident. Although he complained of no additional trauma to his right shoulder, the impact of the accident broke several of the bones in his left hand.
On June 27, 1997, the incision was still draining; Mr. Flannery returned to Ohio Valley and was seen by Dr. Taylor. After examining Mr. Flannery, Dr. Taylor suspected that the wound had become infected. He admitted Mr. Flannery to the hospital so that surgery to cleanse the site could be performed. Defendant-appellee Dr. Dirk Pruis, also affiliated with Ohio Valley, performed the surgery. Dr. Pruis's surgical examination of Mr. Flannery revealed a large purulent hematoma below Mr. Flannery's subcutaneous tissue; it also revealed that the rotator-cuff reconstruction previously performed by Dr. Leonard had torn loose. Because these observations served to further suspicions of an infection, Dr. Pruis irrigated and debrided the wound in an attempt to remove potential bacteria and infected tissue. He then went on to re-repair the rotator cuff. Following the surgery, Dr. Pruis put Mr. Flannery on Vancomycin, an intravenous antibiotic. Suspicions of infection were thereafter confirmed when cultures taken interoperatively by Dr. Pruis grew out a bacteria known as staphylococcus coagulase negative.
Three days after the surgery, Mr. Flannery was discharged from the hospital by Dr. Leonard, who had returned from vacation. Dr. Leonard instructed Mr. Flannery to resume taking Clindamycin in place of the Vancomycin that he had been taking. At no time during Mr. Flannery's hospitalization were any blood tests performed.
On July 3, 1997, Dr. Leonard saw Mr. Flannery in his office. Although no blood tests were taken at that time, Mr. Flannery's incision appeared to be healing well. Accordingly, Dr. Leonard cut his antibiotic prescription in half. By July 14, 1997, however, Mr. Flannery's incision had become increasingly red and swollen. Upon examining Mr. Flannery, Dr. Leonard observed a significant collection of purulent material near the incision site. This led him to believe that the wound was severely infected. Accordingly, he re-admitted Mr. Flannery to the hospital for a third surgery. Upon operating, Dr. Leonard discovered that the wound was indeed grossly infected. Moreover, he discovered that Dr. Pruis's re-repair of the rotator cuff had failed. Although Dr. Leonard irrigated and debrided the affected area, the extensive tissue damage done by the infection prevented him from further repairing the rotator cuff.
After consulting with an infectious-disease specialist, Dr. Leonard prescribed Vancomycin for Mr. Flannery, with indications that he continue the antibiotic for six weeks. Subsequent testing indicated that the antibiotic had eradicated the staph infection. But because Mr. Flannery's rotator cuff could not be repaired, he has continued to experience reduced mobility and pain in his right shoulder.
In May 1998, the Flannerys filed a complaint alleging that Klus Smith, the physical therapist, and Dr. Pruis and Dr. Leonard, the orthopaedic surgeons, had deviated from the accepted standards of care and acted negligently in their treatment of Mr. Flannery.[1]
Prior to trial, counsel for the Flannerys filed a motion in limine seeking to exclude evidence relating to Mr. Flannery's automobile accident. The trial court denied the motion. The matter then went to trial before a jury. At the close of the defendants' cases, counsel for the Flannerys moved for a directed verdict, which was denied. The jury, thereafter, returned verdicts in favor of all the defendants. Under the number C-990807, the Flannerys have appealed the judgment entered upon the verdicts. The Flannerys also moved for a new trial or, in the alternative, for judgment notwithstanding the verdicts, claiming that they were entitled to relief from the jury's verdicts because they were against the weight of the evidence and because defense counsel had engaged in misconduct during closing argument. The trial court denied the motions, and, under the number C-000056, the Flannerys have separately appealed that order.
ASSIGNMENTS
Before we address the five assignments of error raised by the Flannerys, we note for purposes of clarity that the Flannerys initially alleged that (1) Klus Smith had negligently performed physical therapy on Mr. Flannery; (2) Dr. Pruis had negligently re-repaired Mr. Flannery's rotator cuff by using braided sutures and by failing to use a drain; and (3) Dr. Pruis's and Dr. Leonard's antibiotic management and monitoring of Mr. Flannery following his second surgery had been negligent. On appeal, however, the Flannerys have conceded that the defendants presented competent evidence to rebut the negligence claims relating to Klus Smith and to Dr. Pruis's interoperative care of Mr. Flannery. Accordingly, their assertions in the first and second assignments relate only to the Flannerys' postoperative-negligence claim against Dr. Pruis and Dr. Leonard.
In the first assignment of error, the Flannerys assert that the trial court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict. We disagree.
The standard of review for rulings on motions for directed verdict and for judgment notwithstanding the verdict is the same. For each, the court must construe the evidence most strongly in favor of the nonmoving party, and where there is substantial evidence to support that side of the case, upon which reasonable minds could reach different conclusions, the motion must be overruled. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the motions.[2]
Dr. Martin Raff, an infectious-disease specialist, testified as an expert on behalf of the Flannerys at trial. According to him, although Dr. Pruis had acted properly in prescribing Vancomcycin for Mr. Flannery following the second surgery, he and Dr. Leonard had acted negligently by failing to order blood tests that would have allowed them to determine whether Mr. Flannery was receiving an appropriate level of antibiotics and whether his white-blood-cell count was significantly elevated, which would have then assisted them in gauging the severity of the infection. Dr. Raff also opined that Dr. Leonard had acted negligently in taking Mr. Flannery off Vancomycin after only three days of treatment and in then placing him on Clindamycin. According to Dr. Raff, Clindamycin, especially in the low dosage prescribed, was not sufficient to treat Mr. Flannery's staph infection. Finally, Dr. Raff stated that Drs. Pruis and Leonard had acted negligently in failing to involve an infectious-disease specialist in Mr. Flannery's care.
The defendants, however, presented substantial competent evidence to rebut Dr. Raff's assertions. Both Dr. Pruis and Dr. Leonard testified at trial, offering their opinions that their postoperative care of Mr. Flannery met the applicable standards of care. Moreover, the defendants' medical expert, Dr. John Shaffer, an orthopaedic surgeon, also opined that Dr. Pruis's and Dr. Leonard's postoperative care of Mr. Flannery met the standards of care.
Specifically, Dr. Shaffer stated that it was appropriate for Drs. Pruis and Leonard not to order blood tests. According to him, the results of such tests would not have provided any significant information in addition to what they had already gathered through their own observations.
Additionally, the testimony of the doctors demonstrated that the decision to switch Mr. Flannery from Vancomycin, a powerful intravenous antibiotic, to Clindamycin, a less powerful oral antibiotic, was within the standard of care. According to their testimony, the benefit of continuing the more powerful antibiotic was outweighed by the potential risks of such continued use, given that Mr. Flannery appeared to have had only a mild infection that had responded well to surgery.
Finally, Dr. Shaffer testified that Dr. Pruis and Dr. Leonard had acted within the standard of care in not consulting an infectious-disease specialist regarding Mr. Flannery's care following the second surgery. According to him, it was appropriate for orthopaedic surgeons to treat mild infections such as Mr. Flannery's without the involvement of an infectious-disease specialist. In contrast, he explained that the standard of care would dictate that an infectious-disease specialist be consulted where an infection was severe and did not respond to treatment, such as when Mr. Flannery underwent his third surgery.
The Flannerys argue, however, that the expert testimony of Drs. Pruis, Leonard, and Shaffer was not sufficient to rebut that of Dr. Raff. In support of this claim, they attack the testimony of Dr. Pruis and Dr. Leonard as being self-serving. This argument lacks merit.
Dr. Pruis's and Dr. Leonard's status as defendants did not render them incompetent to offer expert testimony as to the relevant standards of care. Evid.R. 601(D), which governs the competency of expert medical testimony, requires only that the witness be licensed to practice medicine and devote at least one-half of his professional time to active clinical practice in his field of licensure, or to its instruction at an accredited school.[3] A review of Dr. Pruis's and Dr. Leonard's testimony demonstrates that these requirements were satisfied. They, therefore, were competent to offer testimony regarding the standards of care.
The Flannerys also contend that Dr. Shaffer's opinion that the antibiotic regimen met the standard of care was "conclusory." Citing portions of his testimony where Dr. Shaffer was unable to recall the specific recommended dosage for Clindamycin, the Flannerys contend that Dr. Shaffer lacked a basis from which to conclude that Mr. Flannery was prescribed an appropriate dosage of Clindamycin. But portions of Dr. Shaffer's testimony that the Flannerys do not cite establish that, prior to trial, he had compared the dosage prescribed to Mr. Flannery with the recommended dosage and had concluded that the two were consistent. Given this, we reject the Flannerys' claim that Dr. Shaffer's testimony was merely conclusory and without an appropriate basis.
Moreover, we are persuaded that, in raising these issues regarding the testimony of Drs. Pruis, Leonard, and Shaffer, the Flannerys are actually attempting to attack the doctors' credibility, not their competency to provide expert medical testimony. As we have already stated, credibility of witnesses is not a matter proper for consideration in reviewing motions for a directed verdict and for judgment notwithstanding the verdict. The testimony and evidence offered by the nonmoving party, here the defendants, must be construed most strongly in their favor. Construing the evidence in this manner, we hold that reasonable minds could have concluded that Dr. Pruis's and Dr. Leonard's postoperative care of Mr. Flannery was within the appropriate standards of care. Accordingly, we overrule the first assignment of error.
The Flannerys assert, in their second assignment of error, that the trial court erred by refusing to grant a new trial under Civ.R. 59(A)(6) on the ground that the judgment was not sustained by the weight of the evidence. We disagree.
Unlike the review of a motion for a directed verdict or for judgment notwithstanding the verdict, a trial court reviewing a motion for a new trial under Civ.R. 59(A)(6) must weigh the evidence and the credibility of the witnesses to determine whether a manifest injustice has been done.[4] "Where a jury verdict is supported by substantial competent, credible evidence, it is an abuse of discretion to grant a motion for a new trial."[5]
Here, there was substantial competent, credible evidence to support the verdicts for the defendants. Specifically, given the testimony of Drs. Pruis, Leonard, and Shaffer, the jury could reasonably have concluded that neither Dr. Pruis nor Dr. Leonard had breached a standard of care. Accordingly, the trial court properly exercised its discretion in denying the motion for a new trial.
In their third assignment of error, the Flannerys assert that the trial court erred in overruling their motion in limine and in admitting evidence related to Mr. Flannery's automobile accident, which they contend was irrelevant and prejudicial.
Although the Flannerys filed a motion in limine to exclude evidence of the accident, this motion was denied, and no objection to the introduction of such evidence was raised at trial. In fact, the Flannerys' own counsel elicited testimony on this issue during their case-in-chief.
It is well established that the denial of a motion in limine does not serve to preserve error for appeal.[6] Accordingly, in failing to lodge an objection at trial, counsel waived all but plain error in the admission of the evidence.[7] Courts have consistently cautioned, however, that plain error should be found in civil cases only under exceptional circumstances to prevent a manifest miscarriage of justice.[8] A manifest injustice occurs only when, but for the error, the result of the trial would clearly have been otherwise.[9] Because we conclude that the admission of the accident evidence, even if erroneous, did not rise to the level of plain error, we reject this assignment.
In their fourth and fifth assignments of error, the Flannerys contend that the trial court erred in refusing to grant a new trial based on defense counsels' improper comments during closing argument.
Civ.R. 59(A)(2) provides that a new trial may be granted upon a showing of misconduct by the prevailing party. Whether to grant a motion for a new trial on this ground rests within the sound discretion of the trial court.[10]
In support of their claim that the trial court erred in denying their motion for a new trial, the Flannerys cite a number of instances of alleged misconduct by respective counsel for the defendants during closing argument. In only one instance did the Flannerys' counsel object to the allegedly improper comments. In that instance, defense counsel had addressed the jury, stating, "You are going to get interrogatories after the judge goes through his instructions and it first asks about Dr. Pruis. And you are going to answer no. Was he negligent? No." The Flannerys' counsel then objected, arguing, as he does now on appeal, that it was improper for defense counsel to instruct the jury as to how to complete the interrogatories. Defense counsel, however, then responded by telling the jury that he was simply attempting to indicate that he believed the evidence supported a conclusion that Dr. Pruis was not negligent.
When viewed in context, defense counsel's comment was merely a suggestion regarding what conclusion he believed the evidence warranted. Such a comment was not improper. Accordingly, the trial court properly exercised its discretion in refusing to grant a new trial based on the comment.
The remainder of the comments that the Flannerys take issue with were not objected to. Therefore, unless they constitute plain error, they cannot serve as a basis for reversal. Although some of the comments in question may have been objectionable, when viewed within the context of the entire trial, they cannot be said to have altered the result of the proceedings. Accordingly, they are not plain error. The final assignments of error are, therefore, overruled, and the trial court's judgments are affirmed.
 _____________________________ Per Curiam.
 Doan, P.J., Gorman and Sundermann, JJ.
[1] Although Dr. Leonard was not named individually in the suit, his partnership, Ohio Valley, was a named defendant.
[2] See Civ.R. 50; Nickell v. Gonzalez (1985), 17 Ohio St.3d 136,477 N.E.2d 1145.
[3] See Campbell v. Warren Gen. Hosp. (1994), 105 Ohio App.3d 417,664 N.E.2d 542.
[4] See Rohde v. Farmer (1970), 23 Ohio St.2d 82, 262 N.E.2d 685;Meyers v. Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82,721 N.E.2d 1068.
[5] Hancock v. Norfolk W. Ry. Co. (1987), 39 Ohio App.3d 77,81, 529 N.E.2d 937, 942.
[6] State v. Brown (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph three of the syllabus.
[7] Id.
[8] Reichert v. Ingersoll (1985), 18 Ohio St.3d 220, 223, 480 N.E.2d 802,805, citing Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209,1001 N.E.2d 1003.
[9] See State v. Wickline (1990), 50 Ohio St.3d 114, 552 N.E.2d 913;Bushelman Constr., Inc. v. Glacid Group, Inc. (June 26, 1996), Hamilton App. Nos. C-950412 and C-950438, unreported.
[10] Dawson v. MetroHealth Ctr. (1995), 104 Ohio App.3d 654,662 N.E.2d 1123; Meyers v. Hot Bagels Factory, Inc., supra.