[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 431.]

MANIGAULT ET AL., APPELLANTS, *v*. FORD MOTOR COMPANY, APPELLEE, ET AL.

[Cite as *Manigault v. Ford Motor Co.*, 2002-Ohio-5057.]

*Evidence—Witnesses—New trial is the appropriate remedy when an expert witness's testimony accompanying a videotape without audio is allegedly contradicted by a copy of the videotape with audio, even when the videotape with audio is not discovered until after the trial has been completed.*

(Nos. 2000-2299 and 2001-0203—Submitted January 29, 2002—Decided October 9, 2002.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 73147.

————————————

**PFEIFER, J.**

{¶1} Plaintiff-appellant, Virginia Manigault, individually and as guardian of her husband, Leon Manigault, filed a products liability suit against defendant-appellee, Ford Motor Company in 1995. The suit alleged that a defect in the Manigaults' 1987 Ford LTD Crown Victoria caused the car to suddenly and unexpectedly accelerate. Manigault presented evidence that when Mr. Manigault turned the key in the ignition as the car was parked in his garage facing the street, the car suddenly shifted into gear and sped down the driveway, crossed the street, and crashed into another residence.

{¶2} At trial, Ford presented expert testimony that the alleged malfunction was not possible. The expert testified that even if the unexpected acceleration occurred, it was driver error that caused the injury. He testified that tests conducted on this type of vehicle demonstrated that, even with the car at wide-open throttle, a driver could stop the car by applying a mere 20 pounds of pressure on the brake

pedal. As support, the expert played a videotape without audio of a braking demonstration conducted by Ford on a car identical to the Manigaults' Crown Victoria. At the conclusion of the trial, the jury returned a verdict for Ford.

**{¶3}** Manigault appealed, asserting that the trial court erred by excluding various items of proffered evidence. The court of appeals affirmed the trial court's judgment on those issues and upheld the jury verdict for Ford.

**{¶4}** While the appeal was pending in the appellate court, Manigault's attorney discovered that Ford possessed a copy of the video of the braking demonstration shown at trial that included sound. The audio portion includes a voice, probably the same expert who testified during trial, saying "one hundred seventy-five pounds." Manigault argued that the video indicates that a brake effort of one hundred seventy-five pounds was necessary to stop the vehicle. Based on that interpretation, which she considered new evidence, Manigault filed a motion for reconsideration. The court of appeals denied the motion, limiting its consideration to evidence contained in the trial court record.

**{¶5}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

**{¶6}** There are several troubling aspects about this case, not the least of which is the fact that, for reasons never fully explained, the vehicle whose malfunction allegedly caused the accident was not available for inspection at trial. However, we cannot get past one simple fact: the defendant presented a videotape without audio to the jury when a copy with contradictory audio was apparently available. Because we find this issue dispositive, we need not address the other issues before us.

**{¶7}** At oral argument, counsel for Ford stated that Ford maintains a room containing documents and other evidence that relate to sudden acceleration incidents. This room provides plaintiffs with ready access to relevant information and eases the problems associated with providing the same information to multiple

parties. In establishing and maintaining the room of evidence, Ford has acted the way we wish all corporate citizens would, responsibly, and we commend it for its efforts.

**{¶8}** Providing this convenience to plaintiffs does not relieve Ford of its obligation to avoid misleading the court and to comply with the rules of discovery. We cannot condone the manner in which the video evidence was handled. Ford gave Manigault, and showed the jury, a videotape without sound. Ford solicited testimony based on the videotape from an expert witness. It is possible, as Manigault alleges, that the expert's testimony was directly contradicted by his own words on the audio portion of the videotape. At the very least, the presentation of the video without audio was seriously misleading.

**{¶9}** Section 16, Article I of the Ohio Constitution provides that "every person, for an injury done him in his land, goods, person, or reputation shall have remedy by due course of law." Based on the facts before us, the only way to ensure that the apparently misleading testimony did not unfairly affect the jury, thereby violating Manigault's right to pursue a remedy, is to order a new trial. We hold that a new trial is the appropriate remedy when an expert witness's testimony accompanying a videotape without audio is allegedly contradicted by a copy of the videotape with audio, even when the videotape with audio is not discovered until after the trial has been completed.

**{¶10}** In its brief, Ford makes various arguments concerning the relevance of the video and the audio content. We will not consider them now. Ford will have ample opportunity to make them at the new trial.

Judgment reversed

and cause remanded.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

LUNDBERG STRATTON, J., dissents.

———————————

**COOK, J., dissenting.**

{¶11} The majority reverses the judgment of the court of appeals based on the "one simple fact" that the Ford Motor Company "presented a videotape without audio to the jury when a copy with contradictory audio was apparently available." In doing so, the majority ignores another simple fact: the issue of the videotape did not arise in this case until the appellants filed a motion for reconsideration based on the newly discovered evidence. The court of appeals correctly found that it had no authority to reconsider its decision based on evidence that was never part of the trial court record. *Lamar v. Marbury* (1982), 69 Ohio St.2d 274, 277, 23 O.O.3d 269, 431 N.E.2d 1028.

{¶12} Without ever explaining how the appellants' injection of the new evidence was procedurally proper, the majority simply declares that a new trial is the appropriate remedy in this case. The bench and bar are therefore left to wonder whether today's decision endorses a heretofore unknown procedure under which a party may obtain relief from a *trial court* judgment by introducing newly discovered evidence in the *court of appeals*. If so, the bench and bar are further left to wonder when this new procedure applies and how it coexists with Civ.R. 59(A) and 60(B), which already govern the manner in which parties may obtain a new trial or relief from a judgment. These significant questions, among others, naturally follow from today's dubious decision but are left unanswered by the majority.

{¶13} I respectfully dissent and would affirm for the reasons stated by the court of appeals.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

4

{¶14} In a brief opinion devoid of any statutory or case citations, the majority has reversed the appellate court's judgment on a simple, discretionary evidentiary issue. I believe that this case should have been dismissed as improvidently allowed because the issue on which the majority bases its decision does not reach the threshold test for discretionary appeals. Section 2(B)(2)(e), Article IV, Ohio Constitution (Supreme Court "may" review "cases of public or great general interest"). Furthermore, the issue on which the majority bases its opinion was never raised on direct appeal to the court of appeals, and thus should not have been considered on appeal to this court, let alone been used as the sole basis for the majority's opinion. Finally, even an examination of the merits of Manigault's argument regarding the videotape with the missing audio track does not justify a new trial.

{¶15} The majority's reliance on the missing audio portion of the videotape is improper from a procedural perspective. Based on this "new evidence," Manigault asked the court of appeals to reconsider its judgment affirming the jury's verdict for Ford or, in the alternative to remand the case to the trial court for Civ.R. 60(B) proceedings. The appellate court declined to entertain Manigault's motion to reconsider because the motion relied on evidence dehors the record, which the appellate court is prohibited from considering. See *Lamar v. Marbury* (1982), 69 Ohio St.2d 274, 277, 23 O.O.3d 269, 431 N.E.2d 1028. The appellate court also declined to remand the case because it "might falsely suggest that this court has some opinion concerning the merits of a Civ.R. 60(B) motion when, indeed, we have none."

{¶16} Despite the fact that Manigault never raised the missing-audio allegation in her direct appeal, she raised that issue in her discretionary appeal to this court. The missing audio track is the sole basis for the majority's judgment granting a new trial to Manigault. Issues not raised below cannot be considered in an appeal to this court. Thus, the majority's reliance on the missing audio as the

basis for its opinion is improper.  Manigault should have filed a Civ.R. 60(B) motion with the *trial court*.

**{¶17}** Manigault's case also fails to meet the threshold for certification to this court.  "This court will grant a motion to certify *only* if there is a substantial *constitutional question* or if the case is of *public or great general interest*.  * * * *Novel questions of law* or *procedure* appeal not only to the legal profession but also to this court's collective interest in jurisprudence."  (Emphasis added.)  *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 94, 540 N.E.2d 1381.

**{¶18}** This case does not involve a "novel" question of law or procedure or present an issue that is pertinent to the court's "collective interest in jurisprudence."  The majority is merely second-guessing the appellate court's decision to deny a motion for new trial.  By rule and by necessity, that is not the role of this court.

**{¶19}** The majority, in its only legal citation in the entire opinion, attempts to transform the lower court's denial of a new trial into a constitutional issue by citing the Ohio Constitution's requirement that "every person for an injury done him in his land, goods, person, or reputation, shall have a remedy by due course of law."  Section 16, Article I of the Ohio Constitution.  However, the careful reader will note that this section provides only "a remedy *by due course of law*."  (Emphasis added.)  The law prevents appellate courts from considering evidence dehors the record.  *Lamar*, 69 Ohio St.2d at 277, 23 O.O.3d 269, 431 N.E.2d 1028.

**{¶20}** Evaluation of the evidence is a task for the trier of fact.  *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.  The determination of whether to grant a new trial is within the sound discretion of the trial court.  *Mannion v. Sandel* (2001), 91 Ohio St.3d 318, 321, 744 N.E.2d 759.  If Manigault was deprived of a remedy, it was by her own mistake in failing to file a Civ.R. 60(B) motion with the *trial court*.

**{¶21}** Furthermore, the basis for the majority's decision to grant a new trial is unpersuasive.  The majority's only specific finding regarding the missing audio

6

portion of the videotape is that "[i]t is *possible*, as Manigault alleges, that the expert's testimony was directly contradicted by his own words on the audio portion of the videotape." (Emphasis added.) Specifically, the majority finds that the missing audio portion of the videotape referring to a pressure of 175 pounds *could* contradict Ford's expert's testimony that stopping the car required only 20 pounds of brake pressure. The majority's analysis of this issue is superficial and incomplete.

{¶22} Ford's expert, using the videotape in question as a demonstrative exhibit, testified that he had conducted several braking tests using a 1987 Crown Victoria, the same model involved in the accident in this case. Instrumentation was attached to the car to measure speed, brake pressure, and torque. The instrumentation provided a printed readout of the data for each test. The first three tests measured, among other things, the amount of brake pressure required to hold the car in place while the throttle was sequentially increased in each test. In the fourth test the car was moving when the brake was applied. Ford claims that it was the fourth test that required 175 pounds of pressure on the brakes to stop the car. Ford claims that the fourth test is relevant to this case because the acceleration incident occurred just after Mr. Manigault started his car and shifted it into drive. Therefore, Ford argues, because Mr. Manigault's foot would have been on the brake upon shifting into drive, the fourth test (that measured the brake pressure required to stop a *moving* car) was irrelevant. Ford argues that physics and common sense indicate that it is more difficult to stop an accelerating, moving car, as opposed to a car that is accelerating from a standstill. Ford's argument is certainly plausible and consequently a new trial is not warranted.

{¶23} Finally, the most critical aspect of this dissent is that Ford provided Manigault written data from the acceleration tests. Two of the readouts do appear to reveal that substantially more brake pressure was required to stop the car than the 20 pounds that Ford's expert claimed Manigault needed to exert to prevent the

accident herein. One indicated that approximately 130 pounds of brake pressure was required to stop the car. The other indicated that an initial spike of 250 pounds of pressure was applied to stop the car, shortly thereafter dropping to *175 pounds*. Presumably, these data pertain to the fourth test, although I cannot make this match with certainty. Regardless, Manigault had in her possession at trial two documents that indicated that considerably more than 20 pounds of brake pressure were needed to stop the car under certain circumstances. Therefore, notwithstanding the lack of audio on the videotape, Manigault possessed the information that is the basis of the fraud allegation, i.e., that one of the acceleration tests required 175 pounds of pressure. Thus, no fraud occurred. Manigault's attorney had this information available *before* trial. Manigault's failure to evaluate and use this information to cross-examine Ford's expert is not Ford's responsibility.

{¶24} Therefore, I believe that this case utterly fails to provide an issue for the court to address because the issue ruled upon was not raised in the court below, the case does not meet this court's threshold test for review, and because Ford did not commit fraud in that the test in which the 175 pounds of brake pressure was required to stop the car was very likely immaterial to the accident herein. Remanding for retrial unfairly gives Manigault a second bite at the apple in already protracted litigation when none is deserved. Manigault's attorneys failed to use the data to cross-examine Ford's expert and failed to file the Civ.R. 60(B) motion in the proper forum. We are not obligated to save parties from their attorneys' mistakes. Accordingly, I respectfully dissent.

———————————

Murray & Murray Co., L.P.A., Thomas J. Murray and Mary O'Neill; Robert Zelvy & Associates and Robert Zelvy; Weisman, Goldberg & Weisman and Fred Weisman, for appellants.

Thompson Hine L.L.P., Elizabeth B. Wright and Jennifer D. Mingus, for appellee.

January Term, 2002

_____