**The STATE of Ohio**

v.

**VENTURA.**

Court of Common Pleas of Ohio,
Hamilton County.

No. B–9806493.

Decided April 16, 1999.

*Daniel J. Breyer,* Special Prosecutor and Clermont County Assistant Prosecuting Attorney, for the state.

*Marc D. Mezibov* and *John P. Feldmeier,* for defendant.

**18**

ANN MARIE TRACEY, Judge.

This matter comes before the court on the motion of defendant George G. Ventura ("Ventura") to prevent the state of Ohio from presenting certain evidence through witnesses Michael Gallagher and Cameron McWhirter. The court has been fully advised, and the court has heard arguments of counsel. Ventura seeks to block testimony that he was a source of information concerning access to voice mail with his former employer, which is the basis of the charges he faces here. He asserts that R.C. 2739.12, the newspaper reporters' "Shield Law," protects him from such disclosure.

It is important to identify the issues in the case before the court and certain matters that are not. The court notes for purposes of this motion that the reporters themselves, Gallagher and McWhirter, have not in this case sought to exercise a privilege with respect to Ventura's statements to them. To date, the court has received no notice that they are refusing to disclose sources, nor has this court ordered such disclosure. (The court would note, however, that the question has not been posed to McWhirter in court; rather, he reiterates that he has not disclosed a source.) Importantly, then, the issue of *requiring* a reporter to disclose a source is not before the court. Rather, the converse is at issue: Should the court *prevent* a reporter from disclosing a source?

R.C. 2739.12 protects members of the Fourth Estate from disclosing sources of information obtained in the course of employment. R.C. 2739.12 provides:

"No person engaged in the work of, or connected with, or employed by any newspaper * * * for the purpose of gathering * * * news shall be required to disclose the source of any information procured or obtained by such person in the course of his employment, in any legal proceeding * * *."

Nor is it before the court whether the reporters may identify the source of any substantive material concerning the business practices of Chiquita Brands International. The backdrop of the reporters' disclosure issue here is an investigative report concerning Chiquita, Ventura's prior employer. McWhirter and Gallagher gathered information on its business from sources and eventually published articles in *The Cincinnati Enquirer* in May 1998. Who their sources were and the information they provided regarding alleged business practices are not relevant to the issues before the court on this motion. Rather, the "information" conveyed that is the basis of this motion is the same as the charges here, that is, that Ventura allegedly provided these reporters with information on how to access Chiquita's voice mail system, without privilege to do so, and procured them to do so. Gallagher has pleaded guilty to criminal offenses in this regard.

The court assumes for purposes of discussion that the reporters could raise a shield to protect disclosing the source regarding this type of information.

Ventura concedes that R.C. 2739.12 does not offer the remedy he seeks, that is, requiring the reporters not to disclose a source. The broader issue in the context of this case, then, is whether this court should expand the scope of R.C. 2739.12 to allow Ventura to silence the reporters. That is, can one who provides voice mail codes of another, or one who urges accessing such codes, prevent reporters from identifying him or her?

Ohio Evidence Rule 501 provides:

"The privilege of a witness * * * shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience."

Common law, that is, the law as developed by court cases, has recognized that certain communications should be "privileged," that is, protected from disclosure. Even where highly probative and trustworthy, privileged communications are protected from disclosure because disclosure "is inimical to a principle or relationship * * * that society deems worthy of preserving and fastening." Graham C. Lilly, An Introduction to the Law of Evidence (1978), at 317.

The Ohio legislature has identified carefully those situations wherein it believes that there is a public interest in protecting, or at least addressing, disclosures people make where confidentiality of communication is important. Those complaining of discrimination or "blowing the whistle" on illegal activities or practices are two such examples. The legislature has also determined that there is a public interest in protecting statements made under certain circumstances, such as between spouses, or from a person to his or her attorney, physician, or priest/religious advisor. These statutes promote and protect providing information necessary to obtain proper medical treatment, to procure legal advice, for spiritual counseling, and to support exchanging confidences in the marital relationship. Both statutes and case law have delineated carefully under what circumstances the communication is confidential, or "privileged," and when the information can be disclosed.

Once a privilege applies, it is well established that, subject to well-defined exceptions, the one who holds the privilege is the only one who can determine to release it or to disclose the communication. It is the client, and not the attorney, who can waive the attorney-client privilege; the patient, and not the doctor, who can relinquish privileged communications with a physician (for example, by signing a release of medical records or by suing the doctor for medical malpractice); and the penitent, not his or her priest. See R.C. 2317.02.

R.C. 2739.12 and the equivalent statute regarding news broadcasters, R.C. 2739.04, protect a reporter from disclosing a "source." While relating to a communication of some sort, they differ significantly from privileged communica-

tions. Unlike other statutory and common-law privileges, they do not prohibit disclosing the content of the communication itself. One Ohio court noted that the purpose of these statutes is to protect the relationship between the person who desires to give, and even promulgate, information, but who does not want to be revealed as the source of the information. See *State v. Geis* (1981), 2 Ohio App.3d 258, 2 OBR 286, 441 N.E.2d 803; R.C. 2739.04. And, unlike other privileged communications, there is no prerequisite of confidentiality, either promised, perceived, or actual. A statement by a client to her attorney, for instance, is not protected if a third party (not an agent of the lawyer, generally) is known to be privy to the communication. Finally, professional or ethical requirements aside, the reporter shield laws do not prevent disclosure; rather, they permit nondisclosure, unlike the laws regarding privileged communications.

The Ohio legislature, in recognizing the import of gathering information by the news media, enacted R.C. 2739.12, which permits a reporter to protect the source of information. It does not restrict the scenario to "confidential" providers of information. In spite of the broad sweep of this shield law, the legislature has not yet recognized a need to extend the reporters' "privilege" to their sources.

Nor is the privilege absolute. While declining to recognize a broad testimonial privilege for reporters, the Supreme Court in *Branzburg v. Hayes* (1972), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626, noted that the privilege must be balanced with the obligations of the citizenry and the defendant's rights. *Id.* at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656. Ohio courts have addressed whether a reporter should be required to disclose the information, for instance, when it could be relevant and necessary to a criminal defendant's case. In this event, in *In re McAuley* (1979), 63 Ohio App.2d 5, 17 O.O.3d 222, 408 N.E.2d 697, the court determined that it must balance the newsperson's First Amendment rights with a defendant's right to a fair trial. See *State v. Geis* (1981), 2 Ohio App.3d 258, 2 OBR 286, 441 N.E.2d 803.

However, the opposite scenario is present here: It is the state that seeks the evidence to establish the defendant's commission of the crime alleged, through the testimony of an alleged accomplice. Here the evidence is that the source at issue provided Gallagher and McWhirter with information on how to access voice mail messages, which accessing allegedly violated the law. Generally, when an otherwise privileged communication is for the purpose of furthering a crime or a fraud, it is not privileged. See, *e.g. United States v. Cotroni* (C.A.2, 1975), 527 F.2d 708, certiorari denied (1976), 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830; *United States v. Kahn* (C.A.7, 1972), 471 F.2d 191, 195, certiorari denied (1973), 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964; *Fraser v. United States* (C.A.6, 1944), 145 F.2d 139, 143. Nor are communications privileged between an attorney and his or her client about a crime or fraud to be committed

sometime in the future. *United States v. Hoffa* (C.A.6, 1965), 349 F.2d 20, 37, affirmed (1966), 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. In this regard, a prima facie showing of fraud defeats a claim of the privilege. *Natta v. Zletz* (C.A.7, 1969), 418 F.2d 633, 637. Where the effect of a privilege is to withhold information from a factfinder, courts should strictly construe it. *In re Grand Jury Investigation* (C.A.3, 1979), 599 F.2d 1224.

▆▆ The court's creating a privilege here which could effectively shield the commission of a crime would be inconsistent with public policy. Such would be inappropriate unless it promoted a greater public policy or rose to constitutional proportions. Neither is evident here.

While indeed there is a compelling public interest in protecting the ability of the news media to obtain and disseminate information, the need to protect the *source* of information is more convoluted. Potentially significant implications arise. Could a person, after reflecting on the impact of statements to a reporter, then block the reporter from using his or her name or otherwise revealing identifying circumstances? If a source reveals a criminal activity to a reporter, should the source be able to preclude the reporter from revealing the source's identity even if that facilitates the activity? Making the "source" the holder of the privilege in effect would restrict the freedom of the press.

Finally, when viewed in "the light of reason and common sense," other dynamics in this case further militate against allowing Ventura to block the reporters' testimony. It is apparent that there is no "relationship" left to protect between him and the reporters. The horse has already left the barn: Gallagher has identified Ventura as a source to prosecutors and in testimony. It has been disseminated publicly. Closing the door at this juncture merely accomplishes blocking testimony at trial.

Further, collateral to the basis of the court's decision here, Ventura is an attorney. Unquestionably he was familiar with the concepts of privilege, ethical requirements, and the distinction between the two. He knew, or should have known, that the reporters might divulge his identity.

Essentially, Ventura, allegedly, told the reporters a "secret," the enforceability of which was nil. Under the statute, the law, and the circumstances of the case, it would be inappropriate to hold otherwise.

There being no statutory, common-law, policy, or common-sense reason for granting the motion, for the above-stated reasons the court finds that the motion pursuant to R.C. 2739.12 to block any testimony of Gallagher and McWhirter

**22**

which is relevant to the offenses charged, and which purportedly identifies Ventura as the source, is not well taken and is denied.

SO ORDERED.

*Judgment accordingly.*