George **VENTURA**, Plaintiff

v.

**THE CINCINNATI ENQUIRER,
et al., Defendants**

No. C–1–99–793.

United States District Court,
S.D. Ohio,
Western Division.

Feb. 11, 2003.

## ORDER

HERMAN J. WEBER, Senior District Judge.

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 93), to which both plaintiff and defendants object (doc. nos.94, 95). An oral hearing on the parties' objections was held on November 20, 2002. The matter is now ripe for *de novo* review and decision.

## I. Procedural History

Plaintiff George G. Ventura brings this action for breach of contract and tortious breach of contract (Counts I and II), promissory estoppel (Count III), promissory fraud (Count IV), negligent hiring or supervision (Count V), and negligent disclosure (Count VI) against defendants The Cincinnati Enquirer (Enquirer) and Gannett Company, Inc. (Gannett). The action arises out of defendants' alleged disclosure of plaintiff as a confidential source of information with respect to a series of articles the Enquirer had intended to publish regarding Cincinnati-based Chiquita Brands, International, Inc. (Chiquita), and plaintiff's subsequent indictment and conviction on criminal charges for conduct relating to the securing of Chiquita voice mail information.

## II. Undisputed facts

The parties have submitted proposed findings of fact and conclusions of law in connection with their objections to the Report and Recommendation (doc. nos.102, 103). The undisputed facts are as follows:

1. In 1996, the Cincinnati Enquirer began to investigate and report on certain business activities of Chiquita.

2. Defendants assigned two veteran reporters, Michael Gallagher and Cameron McWhirter (the reporters), to produce what ultimately became known as the "Chiquita Story."

3. Defendants actively sought out individuals willing to serve as news sources for the Chiquita Story. The Enquirer posted an inquiry on the internet soliciting the assistance of individuals who were able and willing to provide information and/or documentation for the Chiquita Story.

4. Plaintiff George Ventura, a former Chiquita employee, responded to the Enquirer's request for assistance by contacting the Enquirer and explaining that he

had information which the reporters might find useful.

5. The reporters promised plaintiff that they would not disclose his identity as a confidential news source in exchange for information for the Chiquita Story.

6. Plaintiff and the Enquirer understood that the commitments made by the reporters were binding upon defendants and that defendants were bound by the same pledge of confidentiality.

7. Plaintiff agreed to provide defendants with numerous documents and information for preparation of the Chiquita Story.

8. Defendants concealed from plaintiff the fact that both reporters were secretly taping many of their conversations with him and lied when plaintiff asked them if they were taping him.

9. On October 3, 1997, Gallagher made his first entry into Chiquita's voice mail system.

10. A number of weeks after plaintiff had entered into his agreement with defendants, Ventura gave McWhirter voice mail codes to certain voice mailboxes at Chiquita. McWhirter did not use the codes but gave them to Gallagher after having received them from plaintiff.

11. Defendants published the first installment of the Chiquita Story on May 3, 1998.

12. Following publication, Chiquita threatened the Enquirer with civil litigation and provided it with information demonstrating Gallagher's illegal entries into its voice mail system. The Enquirer settled with Chiquita on or about June 28, 1998, publicly apologizing for Gallagher's conduct and paying Chiquita more than $10 million dollars.

13. On May 22, 1998, the Hamilton County Court of Common Pleas appointed a special prosecutor to investigate potential criminal conduct surrounding the gathering of information for the Chiquita Story.

14. In anticipation of the legal action, defendants retained numerous materials related to the Chiquita Story, including source-identifying materials.

15. On June 26, 1998, a grand jury subpoenaed the Enquirer. The subpoena directed the Enquirer to produce to the grand jury materials utilized or obtained in connection with the gathering of information for the Chiquita Story.

16. The Enquirer terminated Gallager's employment that same day. The Enquirer demanded that Gallagher return to it all Enquirer "property . . . in [his] possession, including files, photographs, tape recordings, recording devices, notes, calendars, etc."

17. In response to the grand jury subpoena, the Enquirer asserted Ohio's Shield Law, which allows news reporters to protect materials identifying confidential sources, and established a screening process designed to withhold from the special prosecutor and the grand jury evidence that identified confidential news sources.

18. The parties disagree as to whether the Enquirer produced documents that identified plaintiff as a confidential source to the grand jury. It is undisputed that among the materials the Enquirer produced pursuant to the subpoena was a post-it note with the letters "GV" and plaintiff's telephone numbers written on it.

19. Before and after publication of the Chiquita Story, Gallagher had removed source-related materials from the Enquirer office.

20. After retaining an attorney, Gallagher retrieved several Chiquita materials at his home, including several audio tapes and documents identifying plaintiff as a confidential news source. Gallagher boxed

up the materials and gave them to his attorney.

21. Gallagher received a subpoena from the special prosecutor asking for all Chiquita-related materials in his possession. Gallager filed a motion to quash the subpoena under Ohio's Shield Law, stating that there were "a number of attached tapes and documents which if produced would reveal the identity of a confidential source."

22. For approximately two months after Gallagher filed his motion to quash, the source-identifying materials remained sealed pursuant to court order.

23. In or about July 1998, the grand jury subpoenaed Gallagher's home computer, from which prosecutors recovered e-mail messages from and to Ventura.

24. On September 10, 1998, as part of a plea agreement which Gallagher had entered into, evidence which the state court had sealed, including recordings of phone conversations with plaintiff, was released to the grand jury and the special prosecutor. Among the items released was defendants' audio tape of plaintiff's conversation with McWhirter, wherein plaintiff is heard giving voice mail codes to McWhirter.

25. On September 16, 1998, plaintiff was indicted on ten felony counts related to accessing Chiquita's voice mail system. Plaintiff pled no contest to, and was convicted of, four misdemeanor counts of attempted unauthorized access to a computer system in violation of Ohio law.

26. Plaintiff thereafter lost his partnership and employment with his Utah law firm and was suspended from the practice of law for 90 days by the Utah bar.

### III. Defendants' motion for summary judgment

Defendants move for summary judgment on all claims pled in the amended complaint. In support of their motion, defendants argue that there is no probative, admissible evidence to support the claim that defendants identified plaintiff as the confidential source who provided Chiquita voice mail codes; plaintiff cannot recover damages based upon an alleged promise to withhold evidence from a grand jury or based upon alleged compliance with a grand jury subpoena; plaintiff's own criminal conduct rather than defendant's conduct caused plaintiff's alleged injuries; and all of the individual counts of the complaint are deficient in one or more respects.

### IV. The Report and Recommendation

On July 25, 2002, the United States Magistrate Judge issued a Report and Recommendation recommending that defendants' motion for summary judgment be granted in part and denied in part. Specifically, the Magistrate Judge recommended that summary judgment be entered against plaintiff and in favor of defendants on plaintiff's claims for breach of contract, tortious breach of contract, and negligent hiring or supervision. The Magistrate Judge recommended that summary judgment be denied with respect to plaintiff's claims for promissory estoppel, promissory fraud, and negligent disclosure.

### V. Defendants' objections to the Report and Recommendation

Defendants object to the Report and Recommendation on four grounds: 1) The Magistrate Judge erred by failing to consider defendants' argument that no admissible evidence supports plaintiff's claim that defendants had identified him as the confidential source who provided the voice mail codes; 2) the Magistrate Judge erred by failing to consider defendants' argument that plaintiff may not recover civil damages based upon the alleged inappropriate submission of evidence to the grand

jury that indicted him; 3) the Magistrate Judge erred by failing to consider defendants' argument that plaintiff's own criminal conduct rather than defendants' conduct caused his alleged injuries, and 4) the Magistrate Judge's recommendation that summary judgment be denied on plaintiff's claims of promissory estoppel, promissory fraud, and negligent disclosure was erroneous.

In response to defendants' objections, plaintiff argues that there is ample evidence to demonstrate that defendants caused plaintiff to be revealed as a confidential news source and thereby directly and proximately caused injury to him. Plaintiff contends that in addition to deposition testimony of Michael Gallagher cited by the Magistrate Judge which reveals that defendants turned plaintiff's name over to the special prosecutor, the record demonstrates that defendants caused Ventura to be disclosed as a confidential news source by 1) surreptitiously tape recording him; 2) failing to destroy or secure the audio tapes and other source-identifying materials; 3) failing to retrieve identifying materials upon Gallagher's termination; 4) failing to intervene in Gallagher's criminal case by filing a motion to quash the subpoena issued to Gallagher; and 5) providing identifying materials (i.e., a post-it note listing plaintiff's initials and telephone numbers) directly to the special prosecutor, which material the prosecutor's office purportedly deemed to be of "critical importance" to the investigation against plaintiff.

Plaintiff also argues that defendants are vicariously liable for Gallagher's disclosures to the special prosecutor following his termination. Plaintiff alleges that defendants had the authority to control Gallagher's use and possession of audiotapes and other materials owned by defendants which were in his possession and

allowed Gallagher to manage those materials. Plaintiff also contends that defendants are not entitled to immunity on the ground that they acted in response to a valid subpoena. Rather, plaintiff contends that the privilege defendants seek to invoke applies only to testimony provided by witnesses before the grand jury rather than to evidentiary materials. Plaintiff argues that even if immunity were to apply to the provision of evidentiary materials, defendants' wrongful conduct leading to the eventual disclosure of his identity occurred prior to issuance of the grand jury subpoena and the disclosure goes beyond the materials produced directly to the grand jury.

In addition, plaintiff contends that the Magistrate Judge addressed and rejected at page 10 of his Report and Recommendation defendants' argument that plaintiff's purported criminal conduct negates his recovery. Plaintiff argues that whether he acted legally or illegally at others' behest is immaterial to the proper disposition of this case.

## VI. Plaintiff's objections to the Report and Recommendation

Plaintiff raises three objections to the Report and Recommendation: 1) The Magistrate Judge's recommendation that plaintiff's breach of contract and tortious breach of contract claims should be dismissed based on a finding that no valid contract existed between plaintiff and defendants is erroneous; 2) The Magistrate Judge's recommendation that defendants owed plaintiff only a moral obligation rather than a contractual obligation is erroneous; and 3) the Magistrate Judge's recommendation that plaintiff engaged in bad faith during the course of his relationship with defendants by knowingly committing a crime in order to obtain the information he sought to provide to the Enquirer reporters is erroneous. Plaintiff does not

object to the Magistrate Judge's recommendation that summary judgment be granted in favor of defendants on plaintiff's negligent hiring claim.

In response to plaintiff's objections, defendants reassert their argument that there is no factual evidence before the Court that the Enquirer and Gannett disclosed to an Ohio grand jury plaintiff's identity as the confidential news source who provided the Chiquita voice mail access codes to Enquirer reporters. Defendants assert that the mere existence of tape recordings and other materials containing plaintiff's identity as a confidential news source is immaterial and did not constitute a breach of the reporters' promise of nondisclosure. Defendants concede that disclosure of the tapes may have contributed to the identification of plaintiff. Defendants argue, however, that they were not responsible for the disclosure since Gallagher turned over the tapes at a time when he was not an agent of defendants and defendants had no legal right or ability to stop Gallagher from cooperating with the grand jury, revealing plaintiff's identity, and agreeing to produce the materials and documents which the state court had earlier sealed. Defendants further argue that there is no legal basis for plaintiff, a convicted criminal, to recover civil damages against a party which allegedly submitted evidence to the grand jury that indicted him. Defendants further argue that it is indisputable that plaintiff's own criminal conduct rather than the alleged conduct of defendants proximately caused plaintiff's purported injuries.

## VII. Applicable law

■ The Court must apply Ohio law to this diversity action. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In construing issues of Ohio law, the federal court must apply state law in accordance with the controlling decisions of the highest court of the state. *Meridian Mutual Insurance Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir.1999)(citing *Erie,* 304 U.S. 64, 58 S.Ct. 817). If the state's highest court has not addressed the issue, the federal court must attempt to discern how that court would rule if it were faced with the issue. *Id.* In making this determination, the federal court may use the decisional law of the state's lower courts and other federal courts construing the state's law, and the decisional law of other jurisdictions as to the majority rule. *Id.* (citing *Grantham & Mann, Inc. v. American Safety Prods.,* 831 F.2d 596, 608 (6th Cir.1987)). The federal court should not disregard the decisions of intermediate appellate courts "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (citing *CIR v. Bosch's Estate,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)).

■ It has long been the law in Ohio that public policy precludes the use of testimony before a grand jury as the basis for a civil action for malicious prosecution. See *Taplin–Rice–Clerkin Co. v. Hower,* 124 Ohio St. 123, 177 N.E. 203 (1931); *Siegel v. O.M. Scott & Sons Co.,* 73 Ohio App. 347, 354–55, 56 N.E.2d 345 (1943). In *M.J. DiCorpo, Inc. v. Sweeney,* the Ohio Supreme Court applied this principle in a case involving claims of libel and intentional infliction of emotional distress. 69 Ohio St.3d 497, 634 N.E.2d 203. 69 Ohio St.3d 497, 634 N.E.2d 203 (1994). The Court articulated the principle in the syllabus of the case as follows:

An affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some

reasonable relation to the activity reported.

The Court reasoned that application of an absolute privilege under such circumstances would "encourage the reporting of criminal activity by removing any threat of reprisal in the form of civil liability" and, in turn, "aid in the proper investigation of criminal activity and those responsible for the crime." *Id.* at 505, 634 N.E.2d at 209. The Court determined that the absolute privilege or immunity for statements made in a judicial proceeding applies to each step of the proceeding from beginning to end and extends to all statements which "bear some reasonable relation to the proceeding." *Id.* at 506, 634 N.E.2d at 209–210 (citing *Hecht v. Levin,* 66 Ohio St.3d 458, 613 N.E.2d 585 (1993)).

The Ohio appellate courts have subsequently interpreted the absolute privilege set forth in *DiCorpo* broadly and have applied it in circumstances other than those presented in that case. In *Bacon v. Kirk,* an Ohio appellate court stated that public policy prohibits basing a claim of civil liability upon a defendant's statements reporting the commission of a crime "or his testimony as a witness before a grand jury or at trial." 2000 WL 1648925 *19 (Ohio App.3d Dist. Oct. 31, 2000)(citing *DiCorpo,* 69 Ohio St.3d at 505, 634 N.E.2d 203; *Hower,* 124 Ohio St. 123, 177 N.E. 203; *Siegel,* 73 Ohio App. at 351, 56 N.E.2d 345). In *Haller v. Borror,* the appellate court applied the privilege in a malicious prosecution action against an individual who had contacted the police about a suspected crime against him and who had cooperated with the police in gathering evidence against the accused. 1995 WL 479424 *3 (Ohio App. 10th Dist. Aug. 8, 1995). In so doing, the Court dismissed the appellant's' attempts to distinguish the holding in *DiCorpo* on the basis that *DiCorpo* involved claims for libel and intentional infliction of emotional distress whereas *Haller* involved a claim for malicious prosecution. The Court found nothing in *DiCorpo* to suggest that the Ohio Supreme Court intended to limit its holding that "an informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported to claims for libel and infliction of emotional distress." *Id.* at *2.

In *Fair v. Litel Communication, Inc.,* the appellate court interpreted *DiCorpo* and *Haller* to "stand for the broad proposition that an individual cannot be held civilly liable for information, whether true or false, he or she provides to a prosecuting attorney so long as the information bears some reasonable relation to the alleged activity reported." 1998 WL 107350 *6 (Ohio App. 10th Dist May 12, 1998) Finally, in *Elling v. Graves,* the appellate court determined that the appellant could not pursue civil claims for fraud and defamation based upon statements made in a psychologist's report and/or testimony since the statements were part of and relevant to a judicial proceeding. 94 Ohio App.3d, 382, 387, 640 N.E.2d 1156 (Ohio App. 6th Dist.1994). The Court noted that Ohio courts prohibit civil actions based on statements made by parties and witnesses during the course of judicial proceedings when those statements are relevant to the proceedings in order to "assure that all participants in a judicial proceeding feel free to testify, question and act …" *Id.* at 386–387, 640 N.E.2d at 1159 (citing *Willitzer v. McCloud,* 6 Ohio St.3d 447, 448–449, 453 N.E.2d 693, 694–695 (1983)).

This absolute privilege against civil liability is consistent with public policy concerns noted by the Hamilton County Court of Common Pleas in resolving a motion filed by plaintiff to prevent the state from presenting testimony of the reporters dis-

closing him as a source. *State of Ohio v. Ventura,* 101 Ohio Misc.2d 15, 720 N.E.2d 1024 (1999). In support of his motion, plaintiff asserted that the Ohio Shield Law, which protects newspaper reporters from being compelled to disclose a source, protected him from such disclosure. The Court disagreed and declined to extend the reporters' "privilege" to plaintiff as a source. The Court noted that as a general rule, "when an otherwise privileged communication is for the purpose of furthering a crime or a fraud, it is not privileged." 94 Ohio App.3d, 382, 387, 640 N.E.2d 1156 (Ohio App. 6th Dist.1994), *Id.* at 20, 720 N.E.2d at 1028 (citations omitted). The Court also observed that creating a privilege under the circumstances presented "which could effectively shield the commission of a crime would be inconsistent with public policy." *Id.* at 21, 720 N.E.2d at 1028. The Court found that creating a privilege would be inappropriate unless such action promoted a greater public policy or rose to constitutional proportions, which it did not in plaintiff's case. *Id.*

## VIII. Opinion

This Court's review of objections to a Report and Recommendation is *de novo.* 28 U.S.C. § 636(b)(1)(B). The district court may modify or reject any portion of the Magistrate Judge's proposed ruling. Fed.R.Civ.P. 72(b).

The Court has carefully considered the arguments presented at the oral hearing of this matter, the parties' briefs, and the evidence of record. The Court finds that the essence of plaintiff's claims against defendants is three-fold: (1) defendants breached a contract and/or promise to plaintiff not to disclose his identity as a confidential source with respect to the Chiquita Story by providing identifying materials to the prosecutor's office, (2) defendants breached a duty owed to plaintiff by failing to take steps to prevent Michael

Gallagher from disclosing plaintiff's identity to the special prosecutor, and (3) defendants breached a duty owed to plaintiff by negligently revealing plaintiff's identity to the special prosecutor and grand jury by providing them with the post-it note with the initials "GV" and plaintiff's telephone numbers written on it. Plaintiff claims that as a proximate result of defendants' breaches and negligence, he was convicted of criminal charges and consequently lost his job and suffered the temporary suspension of his license to practice law. For the reasons set forth below which are not addressed in the Report and Recommendation, the Court finds that defendants are entitled to summary judgment on all claims brought against them.

### 1. Immunity from civil liability

■ The Court will assume for purposes of this discussion that plaintiff has come forward with sufficient evidence to establish a breach of contract or promise by defendants and damages resulting from that breach and plaintiff's subsequent criminal conviction. Proceeding on that assumption, the Court finds that defendants cannot be held liable for those damages under principles of Ohio law granting immunity from civil liability for disclosure of information relating to the reporting and prosecution of a crime to the prosecuting attorney and/or the grand jury. The Ohio courts' far-reaching interpretation of the scope of immunity from civil liability for information provided to a prosecutor or grand jury, and the public policy underlying creation of this absolute privilege, lead this Court to conclude that the Ohio Supreme Court would not make the distinction which plaintiff seeks to draw between (1) statements provided to a grand jury and (2) documentary or other evidence supplied by an informant or produced pursuant to a subpoena.

The Ohio courts have broadly interpreted the bar against civil liability articulated in *DiCorpo* to apply to a variety of civil claims and to extend to information provided during all phases of a judicial proceeding. The public policy underpinning immunity for grand jury testimony applies with equal force to documentary evidence supplied by an informant or pursuant to a subpoena. As is true of testimony provided by an informant which is reasonably related to a judicial proceeding, application of the absolute privilege to the provision of other evidence which bears some reasonable relation to the judicial proceeding would encourage cooperation with authorities by removing any threat of reprisal in the form of civil liability. Application of the absolute privilege would also aid in the proper investigation of criminal activity and those responsible for the crime. For these reasons, the Court believes the Ohio Supreme Court would apply the absolute privilege against civil liability to the claims plaintiff asserts in this case.

Plaintiff seeks to avoid application of the absolute privilege by arguing that defendants did not agree to protect plaintiff's identity only up to the point when they received a subpoena, but they agreed to protect his identity beyond that point by resisting a subpoena and going to jail if necessary; defendants could have asserted Ohio's Shield Law to withhold materials identifying plaintiff before responding to the subpoena; and defendants' disclosure of plaintiff as a source goes beyond materials provided directly to the grand jury.

Plaintiff's arguments do not justify declining to apply the absolute privilege under the circumstances of this case. First, the Court finds that plaintiff has not come forward with evidence that defendants disclosed his identity to any individual or entity other than the prosecutor or the grand jury. Second, the questions of whether defendants could have taken additional steps to protect plaintiff's identity and whether defendants' obligation not to disclose plaintiff's identity continued beyond issuance of the subpoena are immaterial to application of the absolute privilege of immunity from civil liability for the disclosure. As indicated by the Court of Common Pleas, the "privilege" against disclosure belongs to defendant. It would not promote Ohio public policy to allow plaintiff to hold defendants liable for failure to exercise their "privilege" under circumstances where asserting the "privilege" could shield the commission of a crime. For these reasons, the Court finds that under Ohio law, defendants are absolutely immune from civil liability for damages stemming from their alleged disclosure of plaintiff's identity as a source to the prosecutor or the grand jury.

The Court's conclusion is consistent with Ohio law on promissory estoppel, which holds that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." See *McCroskey v. State of Ohio*, 8 Ohio St.3d 29, 30, 456 N.E.2d 1204, 1205 (1983)(citing *Talley v. Teamsters Local No. 377*, 48 Ohio St.2d 142, 146, 357 N.E.2d 44 (1976)). As acknowledged by the Magistrate Judge in his Report and Recommendation, both plaintiff and defendants in this case acted with a lack of good faith and fair dealing. Under circumstances such as these, enforcement of the promise would not avoid an injustice but would undermine the Ohio public policy on which immunity from civil liability for the provision of evidence in the course of, and relevant to, a judicial proceeding is based.

## 2. Vicarious liability

Assuming the Ohio Supreme Court would not extend the absolute privilege against civil liability to the production of documents, defendants are nonetheless entitled to summary judgment on plaintiff's claims insofar as those claims are premised on a theory of vicarious liability for disclosures which Gallagher made following his termination from defendant's employment. The Court has considered plaintiff's arguments in support of vicarious liability but finds those arguments are not well-taken for the reasons stated below.

Plaintiff argues that by failing to retrieve source-identifying materials from Gallagher upon his termination and by failing to intervene in the proceedings regarding Gallagher's subpoena, defendants continued their delegation of authority to Gallagher to maintain the confidentiality of the materials sought by the prosecutor. Plaintiff contends that when Gallagher decided to provide the materials to the special prosecutor, and thereby expose plaintiff to a criminal indictment, defendants became vicariously liable for the decision. Plaintiff argues that Gallagher's actions with regard to disclosing confidential-source materials which defendants legally owned were taken with the apparent authority of defendants since defendants continued to entrust Gallagher with the responsibility of preserving these materials, defendants did not give plaintiff or the special prosecutor any notice that Gallagher no longer had legal authority over these materials, and defendants did not make any effort to intervene and secure these materials. Plaintiff further contends that defendants demonstrated their continued delegation of authority to Gallagher throughout the discovery proceedings in this case by repeatedly insisting that Gallagher not reveal conversations he purportedly had with defendants' attorneys.

In support of his theory of vicarious liability, plaintiff cites the general principle of *respondeat superior*, i.e., an employer is subject to vicarious liability to third parties for the acts which an individual under the employer's control commits while carrying out a function for the employer. See 39 Ohio Jurisprudence 3d (1980) 471–473, Employment Relations, § 382. Plaintiff cites various cases from Ohio and other jurisdictions for the proposition that an agent's apparent authority may continue after actual authority has been revoked where notice of the revocation has not been given. See, e.g., *Borock v. Comerica Bank–Detroit*, 938 F.Supp. 428, 431–32 (E.D.Mich.1996); *Johnson v. Nationwide General Insurance Co.*, 971 F.Supp. 725 (N.D.N.Y.1997) *Herbert Constr. Co. v. Continental Insurance Co.*, 931 F.2d 989, 996 (2d Cir.1991); *Aetna Insurance Co. v. Stambaugh–Thompson Co.*, 76 Ohio St. 138, 81 N.E. 173 (1907).

The Court finds, however, that the proposition for which plaintiff cites those cases simply has no applicability to the situation presented by this case. While Gallagher indisputably was acting as defendants' agent when dealing with plaintiff during the course of Gallagher's employment, the disclosures leading to plaintiff's criminal indictment and conviction did not occur until after defendants had terminated plaintiff's employment. There is no evidence that Gallagher was authorized to act as defendants' agent at that point. There is likewise no evidence that defendants used any words or engaged in any conduct which could have created the appearance that Gallagher had the authority to enter into any transaction on behalf of defendants following his termination from employment and to support the imposition of liability on defendants for Gallagher's

post-termination disclosures. Absent the existence of any agency relationship following Gallagher's termination, defendants cannot be held vicariously liable for his disclosures.

### 3. Direct liability

■ Again assuming that defendants are not immune from civil liability based on their production of documents pursuant to the subpoena issued to them, plaintiff's claims must nonetheless fail insofar as he seeks to hold defendants directly liable for breach of their promise not to reveal his identity as a news source. At the oral hearing on the objections to the Report and Recommendation, plaintiff identified three items of documentary evidence produced by defendants pursuant to the subpoena which purportedly revealed plaintiff's identity: (1) a post-it note with the initials "GV" and plaintiff's telephone numbers on it; (2) information about plaintiff contained in the Martindale–Hubbell Law Directory; and (3) documents regarding Chiquita which plaintiff had supplied and which would have contained his fingerprints. There is no evidence, however, that authorities took fingerprints from Chiquita documents or used fingerprints to identify plaintiff as a source of the documents. Moreover, production of the post-it note and the Martindale–Hubbell information cannot reasonably be construed as a breach of defendants' promise not to disclose plaintiff's identity as a news source. While such evidence in combination with evidence from other sources may have enabled the special prosecutor to link plaintiff with the Chiquita Story and the accessing of Chiquita's voice mail system, neither piece of evidence identifies plaintiff as a news source. For these reasons, a reasonable jury could not find that defendants breached their promise never to reveal plaintiff's identity as a news source by producing in response to the subpoena the alleged source-identifying materials on which plaintiff premises his claim of direct liability.

### IX. Conclusion

In accordance with the foregoing, the Court hereby **ADOPTS** the Magistrate Judge's recommendation that summary judgment be granted in favor of defendants and against plaintiff on plaintiff's claims for breach of contract, tortious breach of contract, and negligent hiring or supervision. The Court **DECLINES TO ADOPT** the Magistrate Judge's recommendation that summary judgment in favor of defendants be denied as to plaintiff's claims for promissory estoppel, promissory fraud, and negligent disclosure. Defendants' motion for summary judgment is **GRANTED** on all claims asserted by plaintiff. This action is **DISMISSED** and is **TERMINATED** on the docket of this Court at plaintiff's cost.

**IT IS SO ORDERED.**