JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants, AAA All City Heating, Air Conditioning Home Improvement, Inc. ("AAA") and David Benson ("Benson") (collectively referred to as "appellants"), appeal the jury verdict in favor of the defendants-appellees, New World Communications of Ohio, Inc., d.b.a. WJW-TV8 ("TV8") and Carl Monday ("Monday") (collectively referred to as "appellees"). Finding no merit to the appeal, we affirm.
 {¶ 2} Appellants filed an amended complaint against the appellees and Regina Moore ("Moore") and Rufus Robinson ("Robinson") alleging fraud, tortious interference, defamation, and infliction of serious emotional distress. Through various pretrial motions, Moore and Robinson were dismissed as parties and all claims except fraud and defamation were dismissed.
 {¶ 3} The complaint stemmed from a 1996 broadcast by TV8's "I-Team" and investigative reporter, Monday. The broadcast pertained to an investigation of heating contractors who were allegedly exploiting the dangers of carbon monoxide poisoning in order to sell homeowners new furnaces. Hidden cameras were placed inside the homes of Robinson and Moore to record inspections by various local heating contractors. Prior to the homeowners contacting the companies, W.F. Hahn, an independent heating contractor, tested and inspected each furnace to verify that they were working properly, with no danger of carbon monoxide.
 {¶ 4} Monday chose AAA after the Better Business Bureau ("BBB") told him that AAA had more complaints filed against it than any other company in the heating industry over the past three years. Robinson and Moore contacted AAA, alleging that they had no heat. AAA sent Benson to respond to both service calls.
 {¶ 5} Benson found Robinson's furnace in working order with no danger of carbon monoxide. However, Benson inspected Moore's furnace and found that the heat exchanger was cracked and "had a hole the size of his hand," which made the furnace unsafe. Benson advised Moore of the crack and that a "bad amount of carbon monoxide" was leaking into her home. However, he never conducted a carbon monoxide test. He told her that the furnace was dangerous to operate and that he was required by law to shut it off. He also asked her to sign a release to absolve him of liability if she continued to operate the furnace and "it kills you." He then quoted prices for a new furnace.
 {¶ 6} After the inspection, Monday contacted AAA and Benson. Benson denied that he told Moore that her furnace was leaking carbon monoxide or that she needed to replace her furnace immediately. Benson then returned to Moore's home and showed Monday the crack in the heat exchanger.
 {¶ 7} After Benson's inspection, W.F. Hahn reinspected the furnace and found no crack or hole in the heat exchanger. He also found that her furnace did not leak carbon monoxide and the crack Benson found did not present a danger. Two other heating contractors were also contacted to inspect Moore's furnace. Neither contractor found any problems.
 {¶ 8} The investigation was broadcast in February 1996. The broadcast identified AAA as "one of the bad boys of the Better Business Bureau's hit list." Moore stated during the broadcast that AAA "should be shut down because they just rip people off."
 {¶ 9} At the close of appellants' case, appellees moved for and received a directed verdict on the fraud claim. The defamation claim proceeded to the jury, which found in favor of the appellees.
 {¶ 10} Appellants raise ten assignments of error on appeal.
 Improper Use of Request for Admissions {¶ 11} In its first assignment of error, appellants argue that the trial court erred in failing to sanction appellees for the improper use of their request for admissions.
 {¶ 12} The imposition of sanctions rests with the sound discretion of the court. Abuse of discretion connotes conduct on the part of the trial court amounting to more than an error of law or judgment, but rather an attitude that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
{¶ 13} "* * * The term discretion itself involves the idea ofchoice, of an exercise of the will, of a determination madebetween competing considerations. * * *" State v. Jenkins(1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264, 313, citingSpalding v. Spalding (1959), 355 Mich. 382, 384-385,94 N.W.2d 810, 811-812.
 {¶ 14} In the instant case, appellees, during Benson's cross-examination, introduced Benson's responses to their request for admissions. Question number 11 asked: "Admit that you attempted to sell a new furnace to Regina Moore when a new furnace was not necessary." The written response given was "Admit." However, Benson denied that he would admit to that statement. Appellants claimed that the admissions used by appellees were the result of forgery or misconduct by defense counsel, such that the responses used were not those which were provided to defense counsel. Instead, appellants contended that the response attached to appellees' motion for summary judgment was the correct response, which read: "Admit tried to sell new furnace. Deny new furnace was not necessary."
 {¶ 15} The trial court initially found that there appeared to be no sign of forgery or misconduct by defense counsel. After conducting a separate hearing on the issue, the trial court, without objection by any party, advised the parties that it would instruct the jury on the two conflicting responses the following week to allow appellants to provide the original response, even though appellants claimed not to have it. At the close of all testimony, the trial court explained to the jury that two different responses existed, stating, "So I thought you should be aware of that for purposes of testing what the witness was saying at the time. Beyond that, I ask that you make no conclusions or draw any inferences to these." Appellants made no objection to this instruction.
 {¶ 16} The record contains no evidence of misconduct by defense counsel. Rather, the evidence shows that two responses to the request for admissions were provided to defense counsel containing different answers to the eleventh question. The trial court thoroughly reviewed both responses, noting the similarities in punctuation on each response, that no evidence of "white out" was used, and that the faxed responses came from appellants' counsel's office. Therefore, the trial court did not abuse its discretion in not imposing sanctions against appellees.
 {¶ 17} Appellants also claim that the trial court, in directing the jury not to draw any conclusions or inferences to the different responses, wrongly instructed the jury. The issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury. Columbus v. Taylor (1988),39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1385; Calderon v. Sharkey
(1982), 70 Ohio St.2d 218, 436 N.E.2d 1008.
 {¶ 18} Here, the trial court did not abuse its discretion in allowing both responses to the request for admissions to be admitted into evidence. The trial judge was in the best position to adequately instruct the jury, consistent with the circumstances of the case regarding the two different responses. Furthermore, no objection was made to the court's instruction. Therefore, we find that the trial court did not abuse its discretion in the explanation given, nor did it misdirect the jury.
 {¶ 19} Accordingly, the first assignment of error is overruled.
 Motion to Show Cause {¶ 20} In its second assignment of error, appellants argue that the trial court erred in holding that their motion to show cause was moot.
 {¶ 21} The grant or denial of a motion for contempt rests within the trial court's sound discretion. State ex rel. Adkinsv. Sobb (1988), 39 Ohio St.3d 34, 35, 528 N.E.2d 1247. In order to find an abuse of that discretion, the trial court's decision must be deemed unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore, supra.
 {¶ 22} Appellants' motion alleged that appellees destroyed or withheld important videotape evidence that proved Benson made exculpatory statements to Moore encouraging her to purchase a carbon monoxide detector. Appellants claimed that appellees failed to provide a complete copy of the videotape from the second hidden camera used in Moore's home. The copy which was provided lacked the final ten minutes in which Benson allegedly made the exculpatory statements.
 {¶ 23} The motion requested that the court sanction appellees pursuant to Civ.R. 56(G), governing affidavits made in bad faith. The subject affidavit was from appellees' counsel Kenneth A. Zirm, and was attached to a pretrial motion. The affidavit explained that the second videotape was not produced because it simply provided a different angle and appellants did not request it. However, appellants claim that the second tape had better sound quality to hear the exculpatory statements made by Benson.
 {¶ 24} Appellants had requested that the trial court deny appellees' pending motion for summary judgment and order that the original videotapes be made available for analysis by sound engineers at appellees' expense. At the time this motion was ruled upon, the court had previously ruled upon appellees' motion for summary judgment and appellees claimed that they no longer had the original videotapes. Therefore, finding this motion moot was not an abuse of discretion.
 {¶ 25} Appellants now request that this court order a new trial. In support of their argument, they cite Manigault v. FordMotor Co., 96 Ohio St.3d 431, 2002-Ohio-5057, in which the Ohio Supreme Court held that a new trial is the appropriate remedy when an expert witness' testimony accompanying a videotape without audio is allegedly contradicted by a copy of the videotape with audio, even when the videotape with audio is not discovered until after the trial has been completed.
 {¶ 26} The instant case is distinguishable from Manigault
because both videotapes were introduced into evidence. Benson testified extensively regarding each tape. Furthermore, the jury had the opportunity to view both tapes in court, and the tapes were available during deliberation. Therefore, Manigault is distinguishable.
 {¶ 27} Additionally, the affidavit upon which appellants premise their request for sanctions was not made in support of a motion for summary judgment. Therefore, sanctions would not be appropriate under Civ.R. 56(B), which governs summary judgment.
 {¶ 28} The trial court did not abuse its discretion in finding appellants' motion to show cause moot. Accordingly, the second assignment of error is overruled.
 Closing Argument {¶ 29} In their third assignment of error, appellants argue that the trial court erred in overruling their objection to statements made by appellees' counsel during closing argument.
 {¶ 30} Great latitude is afforded to counsel in presentation of closing argument to the jury. Pang v. Minch (1990),53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph 2 at the syllabus. Control over the latitude allowed rests within the discretion of the trial court. Hitson v. City of Cleveland (Dec. 13, 1990), Cuyahoga App. No. 57741. A reviewing court will not disturb the exercise of that discretion unless the record clearly demonstrates a highly improper argument that tends to inflame the jury. Lance v. Leohr (1983), 9 Ohio App.3d 297, 298,459 N.E.2d 1315; see, also, Brooks v. Brost Foundry (May 2, 1991), Cuyahoga App. No. 58065. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore, supra.
 {¶ 31} During closing argument, appellees' counsel told the jury that the court had ruled that Moore's statement, "I think they should be shut down because they just rip people off," was protected opinion. Appellants claim that this comment constitutes misconduct because it incorporated a proposed jury instruction that was rejected by the court.
 {¶ 32} In support of their argument, appellants citeCampbell v. Warren Gen. Hosp. (1994), 105 Ohio App.3d 417,664 N.E.2d 542, in which the court held that a new trial is warranted if comments in closing argument prevent the aggrieved party from receiving a fair trial. In Campbell, the defense counsel repeatedly ignored the court's in limine instruction. Campbell
is distinguishable from the instant case because the comments made in closing argument did not violate any court order; they mimicked a rejected jury instruction.
 {¶ 33} A determination of misconduct by counsel is within the sound discretion of the trial court. Pierson v. Hermann (1965),3 Ohio App.2d 398, 400, 210 N.E.2d 893. As this court has previously held:
{¶ 34} "A judgment will not be reversed on the grounds ofmisconduct in closing argument unless the circumstances are ofsuch reprehensible and heinous nature as to constituteprejudice. Plavcan v. Longo (July 3, 1980), Cuyahoga App. No.39964." Hitson, supra.
 {¶ 35} Appellants have failed to demonstrate to this court that their substantial rights were violated by comments made by appellees' counsel during closing argument. The jury was properly instructed not to consider remarks made during closing argument as evidence in the case, and there has been no demonstration of prejudicial error. A presumption exists that the jury follows the instructions given by the trial court. Pang, supra. Thus, in the absence of a showing of prejudicial error, we find no abuse of discretion in allowing appellees to comment that the lawsuit against Moore was dismissed and she was found not liable for her statement because it was protected opinion.
 {¶ 36} Accordingly, the third assignment of error is overruled.
 Deposition and Testimony of Sandra Prebil {¶ 37} In its fourth and fifth assignments of error, appellants argue that the court erred in denying their request to depose Sandra Prebil ("Prebil") and allowing her to testify at trial.
 {¶ 38} We initially note that a trial court enjoys considerable discretion in the regulation of discovery proceedings. Manofsky v. Goodyear Tire Rubber Co. (1990),69 Ohio App.3d 663, 668, 591 N.E.2d 752. Thus, "absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. [Citations omitted.]" State exrel. The V Cos. v. Marshall, 81 Ohio St.3d 467, 469,1998-Ohio-329, 692 N.E.2d 198. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore, supra.
 {¶ 39} Appellants claim that they attempted to depose Prebil, but the court prevented the deposition. However, they did not specifically request the court to allow them to depose Prebil, a BBB employee. Instead, they base their contention on the fact that the trial court ruled that "[P]laintiffs are not permitted to reopen fact discovery" in an entry which granted them an extension to respond to appellee's motion for summary judgment. The trial court's ruling was proper because appellants sought the extension to conduct further discovery, which is impermissible under Civ.R. 56(F).
 {¶ 40} Appellants claim that they did not discover that Prebil was a potential witness for the appellees until her affidavit supported appellees' summary judgment motion. Appellants contend that appellees utilized Ohio's Shield Law to circumvent disclosing Prebil until after the expiration of the discovery deadline. Ohio's Shield Law is promulgated under R.C.2739.04, which provides in pertinent part:
{¶ 41} "No person engaged in the work of, or connected with,or employed by any * * * any noncommercial educational orcommercial television broadcasting station, or network of suchstations, for the purpose of gathering, procuring, compiling,editing, disseminating, publishing, or broadcasting news shall berequired to disclose the source of any information procured orobtained by such person in the course of his employment, in anylegal proceeding * * *"
 {¶ 42} The Ohio Shield Law is a mechanism which protects a journalist from disclosing a source. It does not prevent disclosing the content of the communication; it prohibits the disclosure of the source's identity. State v. Ventura (1999),101 Ohio Misc.2d 15, 720 N.E.2d 1024. Thus, the Ohio Shield Law was properly cited in appellees' responses to interrogatories regarding disclosure of the identities of its sources.
 {¶ 43} While the identities of appellees' sources were privileged, the information which was provided to appellees was not. Thus, appellants could have conducted discovery upon the BBB as appellees did. The record reflects that appellants had knowledge of Prebil as demonstrated by prior communications and exhibits attached to depositions taken during the pendency of this case. There was no element of surprise in this matter. Moreover, the record is devoid of any evidence which would establish that Prebil was a source of appellees. Prebil's affidavit supported appellees' defense to the defamation claim, which withstood summary judgment. Additionally, after appellees' motion for summary judgment was ruled upon, appellants never attempted to depose Prebil prior to trial.
 {¶ 44} Appellants also claim that it was error to allow Prebil to testify at trial because appellees failed to disclose her identity during discovery and the court precluded her deposition.
 {¶ 45} Prior to trial, appellants filed a motion in limine to preclude Prebil from testifying at trial. The record does not reflect the court's ruling on this motion.
{¶ 46} "`An order granting or denying a motion in limine is atentative, preliminary or presumptive ruling about an evidentiaryissue that is anticipated. An appellate court need not review thepropriety of such an order unless the claimed error is preservedby a timely objection when the issue is actually reached duringthe trial. State v. White (1982), 6 Ohio App.3d 1; see, also,Evid.R. 103(A)(1).'
 {¶ 47} Likewise, in State v. Wilson (1982),8 Ohio App.3d 216,the court reasoned at 220 that the `[f]ailure to object toevidence at the trial constitutes a waiver of any challenge,regardless of the disposition made for a preliminary motion inlimine.'" [Citations omitted]. State v. Grubb (1986),28 Ohio St.3d 199, 203, 503 N.E.2d 142.
 {¶ 48} Appellants failed to object to Prebil being called as a witness at trial and failed to object to the trial court's prevention of cross-examining Prebil regarding the veracity of her affidavit, thus waiving all but plain error. State v.Smith, 80 Ohio St.3d 89, 107, 1997-Ohio-355. As the Ohio Supreme Court stated in Goldfuss v. Davidson, 79 Ohio St.3d 116,1997-Ohio-401, at syllabus:
{¶ 49} "In appeals of civil cases, the plain error doctrine isnot favored and may be applied only in the extremely rare caseinvolving exceptional circumstances where error, to which noobjection was made at the trial court, seriously affects thebasic fairness, integrity, or public reputation of the judicialprocess, thereby challenging the legitimacy of the underlyingjudicial process itself."
 {¶ 50} After a careful review of the transcript, we cannot say that allowing Prebil to testify seriously affected the basic fairness and integrity of the judicial process.
 {¶ 51} Accordingly, the fourth and fifth assignments of error are overruled.
 Testimony of Carl Suchovsky {¶ 52} In its sixth and seventh assignments of error, appellants argue that the trial court erred in allowing Suchovsky to give opinion testimony regarding the heating service industry and by denying appellants the opportunity to present a rebuttal witness.
 {¶ 53} Appellants claim that Suchovsky should not have been allowed to testify as to his expert opinion.
 {¶ 54} Evid.R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. Neither special education nor certification is necessary to confer expert status upon a witness. To qualify as an expert, the witness need not be the best witness on the subject. Alexander v. Mt. Carmel Med. Ctr.
(1978), 56 Ohio St.2d 155, 159, 383 N.E.2d 564, 566. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function. State v. Baston (1999),85 Ohio St.3d 418, 423, 709 N.E.2d 128, 133; State v. D'Ambrosio (1993),67 Ohio St.3d 185, 191, 616 N.E.2d 909, 915.
Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion. State v.Williams (1983), 4 Ohio St.3d 53, 58, 446 N.E.2d 444, 448.
 {¶ 55} Here, while appellees never formally requested that the court recognize Suchovsky as an expert, appellants never objected or challenged his qualifications. Thus, they waived all but plain error. State v. Hartman, 93 Ohio St.3d 274,2001-Ohio-1580. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v. Nicholas (1993),66 Ohio St.3d 431, 436, 613 N.E.2d 225, quoting State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 56} We find that the trial court did not abuse its discretion in allowing Suchovsky to testify as an expert in this matter. Suchovsky had worked with gas appliances and gas appliance manufacturers since 1965. He graduated from Case Institute of Technology with a degree in biomedical engineering. He worked for the American Gas Association in their national testing laboratory. In 1968, he co-founded Gas Consultants, Inc., which assists manufacturers of gas appliances in the design of residential furnaces to comply with national safety standards. He also trained the manufacturers' engineering staff on combustion and gas appliance design. He had worked on approximately 70 to 100 cases involving carbon monoxide over the past 25 years, 10 to 15 of which involved alleged cracks in the heat exchangers. He had testified as an expert witness in about 40 to 50 cases.
 {¶ 57} While being duly qualified, Suchovsky gave opinion testimony only as it related to the operation of Moore's furnace. Therefore, we find no plain error and find that Suchovsky was fully qualified to testify as an expert concerning the operation of Moore's furnace.
 {¶ 58} Appellants also claim that the trial court erred in preventing them from recalling Edward Radigan ("Radigan") as a rebuttal witness to refute Suchovsky's testimony.
 {¶ 59} When considering any argument raised on appeal, a reviewing court is limited to considering only those matters found in the record. Volodkevich v. Volodkevich (1989),48 Ohio App.3d 313, 314, 549 N.E.2d 1237. Furthermore, the appellant has the duty to provide a reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error. Id. See, also, App.R. 9(B) and 10(A). In the absence of such evidence within the record, this court must presume regularity of the proceedings below. Id.;Baltz v. Richards (Feb. 6, 2003), Cuyahoga App. No. 81300, discretionary appeal denied (2003), 99 Ohio St.3d 1436; RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 19-20,520 N.E.2d 564.
 {¶ 60} Here, the record is devoid of any evidence that appellants attempted to recall Radigan as a rebuttal witness. Furthermore, Radigan's trial testimony was not provided to this court for review. Without this evidence, we cannot address appellants' seventh assignment of error. Therefore, we must presume regularity and find that the trial court did not abuse its discretion in preventing appellants from recalling Radigan as a rebuttal witness.[1]
 {¶ 61} Accordingly, the sixth and seventh assignments of error are overruled.
 Jury Conduct and Verdict {¶ 62} In its eighth and ninth assignments of error, appellants argue that the trial court erred in denying their motion for a mistrial and entering the jury verdict as the judgment.
 {¶ 63} A trial court may grant a new trial for various specified reasons, including an "irregularity in the proceedings of the court, jury, magistrate, or prevailing party." Civ.R. 59(A)(1). Even absent one of the grounds specified, a trial court may grant a new trial "in the sound discretion of the court for good cause shown." Civ.R. 59(A)(9). Koch v. Rist (2000),89 Ohio St.3d 250, 251, 730 N.E.2d 963. Thus, the trial court's decision under such circumstances is to be afforded great deference. Id. Because the decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court, the standard of review we must apply is abuse of discretion, which connotes an attitude by the court that is unreasonable, arbitrary, or unconscionable. Koch, supra, citing Berk v.Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.
 {¶ 64} There is a long-standing rule in Ohio that an appellate court "will not reverse a judgment because of the misconduct of a juror unless prejudice to the complaining party is shown." State v. Hipkins (1982), 69 Ohio St.2d 80, 83,430 N.E.2d 943, 946. This court has held that where jury deliberations had not yet begun, absent a showing of prejudice, the substitution of an alternate juror for an original juror did not warrant reversal. State v. Brown (1995),108 Ohio App.3d 489, 495, 671 N.E.2d 280. See, also State v. Miley (1991),77 Ohio App.3d 786, 603 N.E.2d 1070, headnote 3, ("Substitution of alternate for regular juror after jury has retired to consider its verdict is not per se plain error; reversal is required only where there is some showing of prejudice").
 {¶ 65} In the instant case, at the conclusion of the case, the court discharged the alternate jurors and submitted the case to the jury. A misunderstanding apparently occurred in which one of the regular jurors believed that he was an alternate and one of the alternates believed she was to deliberate.
 {¶ 66} The court and the parties did not learn of the misunderstanding until the jury returned to deliver its verdict. The court, after considering the situation, concluded:
{¶ 67} "Here's what we've got. We've got eight people whodeliberated consistently throughout the deliberation process,although it was not the eight that I would have expected. I don'tknow what the heck happened. But any event, it did happen.
 {¶ 68} So, I don't see that it's being grounds for a mistrial.* * * We have people that have deliberated, eight individuals,although the core group has been affected."
 {¶ 69} After appellants moved for a mistrial, the court, in denying the motion, explained:
{¶ 70} "What we — what has happened here is the same eightpeople deliberated through this thing. It's just a question ofone happened to be one that we would have otherwise identified asan alternate. So it's not like we have changed the dynamic in thejury room.
• * *
{¶ 71} But I think we did our job during voir dire selectionprocess, everybody seemed to be paying attention throughout thecourse of the trial and I'm confident that any combination of theten that we seated, any eight out of that ten could adequatelyhave deliberated this case."
 {¶ 72} While the Ohio Supreme Court found in Koch that a mistrial was warranted when an alternate juror, after being discharged, was present during jury deliberations, the court firmly concluded:
{¶ 73} "Our opinion does not abrogate the long-standing rulethat juror misconduct should not be the cause of a reversalabsent prejudice. Neither does it create a presumption ofprejudice whenever an outsider invades the sanctity of jurydeliberations. * * * Instead, we will continue to rely upon thesound discretion of our trial judges. When confronted withextraordinary circumstances, a trial court must be allowed toconsider all of the pertinent circumstances in arriving at adecision." Koch, supra.
 {¶ 74} Appellants have failed to demonstrate how the jury's alleged misconduct caused any prejudice. The court properly considered that the same eight individuals were present throughout the trial, were selected from the same voir dire process, and deliberated. Therefore, we find that the court did not abuse its discretion in denying the motion for a mistrial and properly adopted the jury's unanimous verdict as the judgment.
 {¶ 75} Accordingly, the eighth and ninth assignments of error are overruled.
 Motion for a New Trial {¶ 76} In its final assignment of error, appellants argue that the trial court erred and abused its discretion in denying their motion for a new trial.
 {¶ 77} Appellants essentially restate each argument in their previous assignments of error to support their request for a new trial. For the reasons previously discussed for those assigned errors, we find that the trial court properly denied the motion for a new trial.
 {¶ 78} The final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J. and Kilbane, J. Concur.
[1] While Suchovsky's trial testimony may have been contrary to his deposition, appellants did not attempt to impeach him on his prior sworn testimony.